**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ANTHONY GARCIA,
　　　　*Petitioner-Appellee,*

v.

TOM L. CAREY, Warden,
　　　　*Respondent-Appellant.*

No. 02-56895

D.C. No.
CV-01-03455-R

OPINION

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted
February 4, 2004—Pasadena, California

Filed January 20, 2005

Before: J. Clifford Wallace, William C. Canby, Jr., and
Sidney R. Thomas, Circuit Judges.

Opinion by Judge Canby;
Dissent by Judge Wallace

**COUNSEL**

Lawrence M. Daniels, Deputy Attorney General, Los Angeles, California, for the respondent-appellant.

Isaac E. Guillen, Robert P. Ramirez, Covina, California, for the petitioner-appellee.

**OPINION**

CANBY, Circuit Judge:

Petitioner Anthony Garcia was convicted of robbery in California state court. The jury found that the robbery was gang related, and that a gun had been used. Garcia's sentence was increased because of those two findings. After exhausting state remedies, Garcia filed a petition for habeas corpus in federal court, pursuant to 28 U.S.C. § 2254, challenging his

sentence. The district court granted the petition on the ground that there was constitutionally insufficient evidence to support the imposition of the gang and gun sentencing enhancements. The State, in the person of prison warden Tom Carey, appeals. We affirm the district court's grant of habeas relief.[1]

## I.  Background

The jury found to be true the allegation that Garcia had committed the robbery "for the benefit of, at the direction of, or in association with [a] criminal street gang, *with the specific intent to promote, further, or assist in any criminal conduct by gang members*." CAL. PENAL CODE § 186.22(b)(1) (emphasis added).[2] The disputed issue on this appeal is whether the evidence was sufficient, under applicable federal habeas corpus standards, to support the jury's finding of the required specific intent: that is, the intent to "promote, further, or assist in" other criminal activity of the gang apart from the robbery of conviction.

---

[1]We have jurisdiction under 28 U.S.C. §§ 1291 and 2253.

[2]CAL. PENAL CODE § 186.22(b)(1) provides:

Except as provided in paragraphs (4) and (5), any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall, upon conviction of that felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished as follows:

(A)   Except as provided in subparagraphs (B) and (C), the person shall be punished by an additional term of two, three, or four years at the court's discretion.

(B)   if the felony is a serious felony, as defined in subdivision (c) of Section 1192.7, the person shall be punished by an additional term of five years.

(C)   if the felony is a violent felony, as defined in subdivision (c) of Section 667.5, the person shall be punished by an additional term of 10 years.

The jury also found to be true that a principal in the offense had used a gun in connection with the robbery. *See* CAL. PENAL CODE §§ 12022.53(b) and (e)(1).[3] Because it was Garcia's accomplice, and not Garcia himself, who allegedly used a gun during the robbery, Garcia can be subject to the gun enhancement only if the crime was gang-related within the meaning of § 186.22(b)(1). *See* CAL. PENAL CODE § 12022.53(e)(1)(A). This entire appeal therefore turns on the validity of the gang enhancement. With that point in mind, we turn to the facts.

The evidence relating to the robbery was not complicated. Garcia was a member of a gang known as El Monte Flores, or E.M.F. Its "turf" or territory extended to much of the City of El Monte, California. In the early morning hours of January 18, 1998, the victim, Ricardo Bojorquez, entered a liquor store in El Monte. Two or three other persons, including Garcia, were in the store. As he walked to the counter, Bojorquez nodded toward Garcia and said "How do you do?" Garcia responded, "You know me?" Bojorquez answered, "No, I'm

---

[3]CAL. PENAL CODE § 12022.53 provides, in relevant part:

. . .

(b)   Notwithstanding any other provision of law, any person who, in the commission of a felony specified in subdivision (a), personally uses a firearm, shall be punished by an additional and consecutive term of imprisonment in the state prison for 10 years. The firearm need not be operable or loaded for this enhancement to apply.

. . .

(e)(1)   The enhancements provided in this section shall apply to any person who is a principal in the commission of an offense if both of the following are pled and proved:

(A)   That the person violated subdivision (b) of Section 186.22.

(B)   Any principal in the offense committed any act specified in subdivision (b), (c), or (d).

. . .

just saying how are you." Garcia then said, "If you don't know me, don't be talking to me." Bojorquez continued walking toward the counter and said "Whatever." Garcia then asked Bojorquez if he had any change, and Bojorquez answered that he did not. Garcia then said, "Let's see when you come out the door." One of Garcia's companions asked Bojorquez where he was from, but Bojorquez did not answer.

When Bojorquez tried to leave the store, Garcia stood in front of him and said, "I'm Little Risky from E.M.F." He also said, "you want to get jacked [robbed]?" Garcia told his companions to watch for the police. He then took $14.85 from Bojorquez's shirt pocket. One of Garcia's companions lifted his own shirt and grabbed the handle of what Bojorquez thought was a pistol. Garcia told one of his companions to take Bojorquez's bicycle. Bojorquez objected that the bicycle was not his. The companion handed the bicycle to Garcia and he and his companions left with it.

The crime was reported to the police and Bojorquez gave police a statement relating the above facts. He also identified Garcia. At trial, however, he testified that he did not remember what was stated by the gang members at the time of the robbery, and he further testified that Garcia was not one of the persons who accosted him. The liquor store owner, who knew Garcia prior to the incident, testified that Garcia was the one who took the money from Bojorquez.

Santos Hernandez, an El Monte Police Detective, testified as an expert on gangs. Detective Hernandez testified that El Monte Flores, known as "E.M.F." was the largest street gang in El Monte and that E.M.F.'s "turf" included the area known as Little Five Points, where the liquor store in question was located. Detective Hernandez testified that the gang was "turf oriented." Detective Hernandez also testified about three other robberies that had been committed by E.M.F. members, and he stated that robberies, often involving small amounts of money, were one of the primary activities of E.M.F. Detective

Hernandez knew that Garcia was an E.M.F. member. Finally, he testified that it was common for victims of gang-related crimes to backtrack on statements they initially made about the crimes because of the "fear intimidation process."[4]

The jury returned a guilty verdict on the robbery charge and a finding of "true" on both the gang and gun enhancements. Garcia was sentenced consecutively to six years for the robbery, ten years for the gun enhancement, and five years for a previous conviction under CPC § 677(a)(1), for a total of 21 years in state prison. The judge also sentenced Garcia to two years for the gang enhancement, but stayed judgment on that enhancement until Garcia completed his prison term and parole.

The California Court of Appeal affirmed Garcia's conviction and sentence, and the Supreme Court of California denied Garcia's petition for review. Garcia filed a petition for writ of habeas corpus in the United States District Court for the Central District of California. The magistrate judge's report and recommendation concluded that there was insufficient evidence to support the gang and gun sentencing enhancements. The district court adopted the findings of the magistrate judge and granted Garcia's habeas petition. The district court determined that habeas relief was proper because "the prosecution failed to present any direct or circumstantial evidence that [Garcia] robbed Bojorquez with the specific intent to promote, further, or assist in other criminal conduct by the E.M.F. street gang."

---

[4]In explanation, Detective Hernandez stated: "Sometimes the victim will be contacted and told not to come and testify, something will happen to them or to their family or if they work in the city, when they come to work, something will happen to them." There is no evidence in the record, however, that such threats were made in this case.

## II.  Discussion

We review de novo the district court's order granting Garcia's petition for a writ of habeas corpus. *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003). A defendant alleging that the evidence was insufficient to support his conviction can obtain relief only if, "upon the record evidence adduced at the trial[,] *no rational trier of fact* could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (emphasis added). It appears to be an open question in this circuit whether the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), adds a second level of deference to this standard, so that a federal habeas petitioner may obtain relief only by demonstrating that the state court's adjudication on the merits of the claim involved an unreasonable application of *Jackson*'s "no rational trier of fact" standard. *See Chein v. Shumsky*, 373 F.3d 978, 983 (9th Cir. 2004) (en banc). Like our en banc court in *Chein*, we do not decide the affect of AEDPA on *Jackson* because we reach the same result whether we review directly under *Jackson* or whether we review more deferentially the state court's application of *Jackson* under AEDPA's standard. *See id.*

[1] The gang sentencing enhancement required the prosecution to prove that Garcia committed the robbery for the benefit of, at the direction of, or in association with a gang, *and* that he committed the crime with the specific intent to promote, further, or assist in criminal conduct by gang members.[5] Cal. Penal Code § 186.22(b)(1). There is nothing in this

---

[5]It is important to keep these two requirements of the gang enhancement separate. For example, *People v. Olguin*, 31 Cal. App.4th 1355 (1994), cited by the California Court of Appeal in affirming Garcia's sentence, dealt with a challenge to the sufficiency of the evidence to meet the first requirement — that the crime of conviction be "for the benefit of, at the direction of, or in association with" a criminal street gang — not the second requirement of specific intent to further other criminal activity of the gang. *See id.* at 1382.

record, however, that would support an inference that Garcia robbed Bojorquez with the specific intent to facilitate other criminal conduct by the E.M.F. The evidence indicates that Garcia was a gang member and that he robbed Bojorquez in an area known to be in the heart of the gang's "turf." Detective Hernandez, the gang expert, testified that the gang was "turf oriented," and he described three other robberies committed by E.M.F. members in El Monte during the few months prior to Garcia's offense.[6] But there is no evidence indicating that this robbery was committed with the specific purpose of furthering other gang criminal activity, and there is nothing inherent in the robbery that would indicate that it furthers some other crime. There is nothing on the record that connects the "turf-oriented" nature of the gang with the commission of robberies generally, or, more importantly, with the commission of this robbery in particular. There is no testimony that protection of turf enables any other kind of criminal activity of the gang. The expert's testimony is singularly silent on what criminal activity of the gang was furthered or intended to be furthered by the robbery of Bojorquez.

[2] The California Court of Appeal,[7] with one justice dissenting, held that the jury could properly conclude that the robbery of Bojorquez

> was one in a series of street robberies committed by E.M.F. gang members in the southern part of El Monte, including the Five Points Area, not only to obtain the property of the victims, but also as a means of instilling fear of the gang in the residents

---

[6]These robberies helped to qualify El Monte Flores as a "criminal street gang," *see* CAL. PENAL CODE § 186.22(f), that was engaged in a "pattern of criminal activity," *see id.* § 186.22(e).

[7]The decision of the California Court of Appeal was the last "explained" decision of Garcia's appeal, because the California Supreme Court denied review without comment. We therefore look to the opinion of the Court of Appeal as embodying California's decisional rationale. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

of the neighborhood, and thereby facilitating the gang's criminal operations in the area.

For reasons we have just set forth, however, we agree with the federal magistrate judge that "there is absolutely nothing in this record which would support an inference that [Garcia] robbed Bojorquez in order to facilitate other gang related criminal operations within El Monte." The magistrate judge also noted that this theory of specific intent had never been argued to the jury by the prosecution and the jury had not been asked to make such an inference. Any assumption by the jury that the gang was involved in types of criminal activity not mentioned in any of the testimony would be the purest of speculation. There was testimony that the gang committed robberies, but nothing to indicate why those robberies were aided or intended to be aided by this robbery. Because there was *no* testimony or other evidence to support a rational inference that the robbery of Bojorquez was committed with the intent to further other criminal activity of E.M.F., the ruling of the California Court of Appeal meets the deferential AEDPA standard for federal habeas corpus relief: the ruling is "an unreasonable application of [ ] clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The clearly established law, as we have already stated, is *Jackson v. Virginia*, 443 U.S. at 324.[8] To uphold the jury's finding in the circumstances of this case and in the absence of any evidence at all of specific intent is not only an inaccurate, but an unreasonable, application of *Jackson*.

A decision of the California Supreme Court upholding a gang enhancement provides an example of the kind of evi-

---

[8]Although the California Court of Appeal did not expressly refer to *Jackson*, that fact does not affect the application of the AEDPA standard. *Cf. Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam) (holding that State may comply with AEDPA standard without even being aware of governing Supreme Court decisions, so long as ruling does not contradict them).

dence that can support a finding of the requisite specific intent. In *People v. Gardeley*, 927 P.2d 713 (Cal. 1996), an expert testified that an assault of the type involved there "was a 'classic' example of gang-related activity"; the expert explained "that criminal street gangs rely on such violent assaults to frighten the residents of an area where the gang members sell drugs, thereby securing the gang's drug-dealing stronghold." *Id.* at 722. The California Supreme Court held that such testimony permitted the jury reasonably to conclude that the attack was committed with the necessary specific intent to further other criminal activity of the gang. *Id.* No comparable testimony was presented in Garcia's case.

[3] Other California cases also present examples of the kind of evidence permitting an inference of specific intent to further other criminal gang activity. *See, e.g., People v. Augborne*, 104 Cal. App.4th 362, 372-73 (2002) (expert testified to belief that crimes were committed for promotion and assistance of criminal conduct by gang members); *In re Ramon T.*, 57 Cal. App.4th 201, 207-08 (1997) (finding gang enhancement supported by expert evidence and unequivocal act where the attack against a police officer who had another gang member in custody was committed in order to assist the gang member's escape); *California v. Ortiz*, 57 Cal. App.4th 480, 484-85 (1997) (finding sufficient evidence to support a gang enhancement where expert evidence was that a robbery and murder were committed with the specific intent of framing a rival gang for the crimes). Here, Detective Hernandez testified that Garcia was a member of the E.M.F. gang, that the robbery was committed on gang territory, and that the E.M.F. gang was "turf-oriented." Detective Hernandez did not offer any testimony, however, on what was meant by being "turf-oriented," what implications arose from a gang being "turf-oriented," or how the gang's "turf-oriented" nature could support the conclusion that this robbery was committed with the specific intent to promote, further, or assist other gang related criminal activity. Without this evidentiary link, it is unreasonable to conclude that a rational jury could find that Garcia

committed this robbery with the specific intent to facilitate other gang crimes. There was simply a total failure of proof of the requisite specific intent. The district court correctly granted habeas relief on the gang enhancement, and on the firearm enhancement that depended on it.

**AFFIRMED.**

---

WALLACE, Senior Circuit Judge, dissenting:

The majority concludes that habeas relief is warranted because there is "no evidence" that Garcia committed the robbery with the "specific intent to promote, further, or assist in any criminal conduct by gang members." CAL. PENAL CODE § 186.22(b)(1). I believe that the majority misinterprets the requirements of section 186.22(b)(1), fails to credit the rational inferences that could be made from the record, and misapplies the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Thus, I respectfully dissent.

My first disagreement with the majority's analysis concerns its interpretation of section 186.22(b)(1). *See Chein v. Shumsky*, 373 F.3d 978, 983 (9th Cir. 2004) (en banc) ("The *Jackson* standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law" (internal quotations omitted)). The majority contends that there was no evidence indicating what particular criminal gang activity Garcia intended to further in committing the robbery. *See Ante* at 883 ("The expert's testimony is singularly silent on what criminal activity of the gang was furthered or intended to be furthered by the robbery of Bojorquez"). But section 186.22(b)(1) does not require proof that the crime of conviction was committed with the intent to further some other specifically identified crime or category of crimes, and California courts have rejected sufficiency of the evidence claims even where such evidence was entirely lack-

ing. *See People v. Ortiz*, 57 Cal. App. 4th 480, 484-85 (1997) (sufficient evidence for gang enhancement where murder was committed in such a manner as to incriminate a rival gang in retaliation for an earlier incident); *People v. Gamez*, 235 Cal. App. 3d 957, 978 (1991) (sufficient evidence where shooting was a "retaliatory strike" for shooting of member of defendant's gang), *overruled on other grounds*, *People v. Gardeley*, 927 P.2d 713, 725 n.10 (Cal. 1996).

Indeed, the California Court of Appeal rejected Garcia's challenge to the enhancement not because it thought the evidence in the record linked the robbery to some other specifically identified criminal gang activity, but because the evidence supported a rational inference that the robbery was committed with the intent to "facilitat[e]" the "nefarious control of the Little Five Points area and its residents." This "facilitation" theory is entirely consistent with the California Supreme Court's interpretation of section 186.22(b)(1). *See Gardeley*, 927 P.2d at 722 (sufficient evidence where assault was committed in public, and expert testified that gangs often commit violent assaults in public "to frighten the residents of an area where the gang members sell drugs, thereby securing the gang's drug-dealing stronghold").

This brings me to my second objection to the majority's analysis, which involves its assessment of the record evidence in this case. Federal habeas relief is not warranted unless, at the very least, a court can conclude that "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Thus, even assuming that AEDPA does not require us to review state-court applications of *Jackson* deferentially (a point to which I shall soon return), we may grant habeas relief in this case only if the record cannot support beyond a reasonable doubt a rational inference that the robbery was committed with the intent to facilitate E.M.F.'s "nefarious control" of the gang's "turf." *See United*

*States v. Sherwood*, 98 F.3d 402, 408 (9th Cir. 1996) ("[W]e must respect the exclusive province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts, by assuming that the jury resolved all such matters in a manner which supports the verdict" (internal quotations and alteration omitted)).

The majority attempts to distinguish *Gardeley* on the ground that the state's expert in this case, Detective Hernandez, did not present testimony "comparable" to that offered by the expert in *Gardeley*. *Ante* at 885. But, *Gardeley* merely held that such expert testimony was *sufficient* to support a section 186.22(b)(1) enhancement, not that it was *necessary*. The California Court of Appeal thought the evidence in this case sufficient notwithstanding the absence of such expert testimony, and its discussion of this issue is worth quoting at length:

> The People contend the evidence permitted a rational jury to conclude the robbery had been committed with the specific intent to control and maintain gang turf. (*People v. Olguin* (1994) 31 Cal. App. 4th 1355, 1382-83; *People v. Ortiz* (1997) 57 Cal. App. 4th 480, 484-85.) Specifically, the People point out the robbery took place at Little Five Points in the " 'heart' of E.M.F. turf," Bojorquez was unknown to Garcia, Garcia identified himself by a gang moniker, indicated he was a member of E.M.F., and asked where Bojorquez was from, robbery was one of the gang's principal activities, and the gang was "turf oriented."

> We agree the evidence was sufficient to support the enhancement. Based on the testimony of Detective Hernandez regarding the nature of gangs in general, and E.M.F. in particular, the jury could conclude the robbery of Bojorquez was not a random street robbery. Rather, it was one in a series of street

robberies committed by E.M.F. gang members in the southern part of El Monte, including the Five Points Area, not only to obtain the property of the victims, but also as a means of instilling fear of the gang in the residents of the neighborhood, and thereby facilitating the gang's criminal operations in the area. Residents intimidated in this fashion are less likely to report crime, among other things. Indeed, it reasonably can be inferred from the evidence that Garcia took umbrage when Bojorquez spoke to him and robbed Bojorquez not only to obtain his property, but also to intimidate Bojorquez, who apparently was not a local resident, and to put Bojorquez on notice that E.M.F. controlled the turf in the area. The nefarious control of the Little Five Points area and its residents qualifies, in our view, as criminal conduct by gang members within the meaning of the statute.

One judge dissented from the California Court of Appeal's rejection of Garcia's claim, arguing that "if the evidence in this case is sufficient to support the 'gang' enhancement, . . . every crime committed by a gang member, without more, would qualify for the enhancement." But, as the Court of Appeal's majority opinion makes clear, the evidence supporting the gang enhancement was not limited to Garcia's mere gang member status. Importantly, the evidence showed that Garcia asked Bojorquez, who Garcia did not know, where Bojorquez was from and identified himself as "Little Risky from E.M.F." A rational juror could infer from this evidence that Garcia intended to intimidate Bojorquez and the store owner by letting them know that they were dealing with an E.M.F. member on E.M.F. turf, so that Bojorquez, a perceived challenger to the gang's authority, would know not to intrude on E.M.F. turf in the future and so that the store owner would submit to the gang's dominance. The California Court of Appeal could properly conclude that there was sufficient evidence that this form of intimidation would "facilitate" the

gang's "nefarious control" of the area and make it easier to commit crimes there in the future, such as robbery, which was one of E.M.F.'s "principal activities." *See Gardeley*, 927 P.2d at 722. I therefore cannot agree that "there was *no* testimony or other evidence to support a rational inference that the robbery of Bojorquez was committed with the intent to further other criminal activity of E.M.F." *Ante* at 884.

Lastly, I disagree with the majority's analysis of AEDPA. On at least two occasions, we have avoided deciding whether AEDPA requires a federal court reviewing a sufficiency of the evidence claim to accord a state court decision rejecting that claim an additional layer of deference beyond that built into the *Jackson* standard. *See Chein*, 373 F.3d at 982-83; *Bruce v. Terhune*, 376 F.3d 950, 956-57 (9th Cir. 2004) (per curiam). The majority considers it unnecessary to decide how AEDPA interacts with *Jackson* in this case as well, because habeas relief supposedly is warranted even if AEDPA requires us to review state court applications of *Jackson* deferentially.

But if I assume that the California Court of Appeal incorrectly applied *Jackson*, as argued by the majority, I cannot agree that AEDPA makes no difference in this case. Rather, if AEDPA requires an additional level of deference, that deference would preclude relief here. I would therefore reach the question avoided in *Chein* and *Bruce*. As to that question, another member of this court has persuasively explained why AEDPA "clearly mandates not a direct application of *Jackson*, but a deferential review of a state court's application of *Jackson*." *Bruce*, 376 F.3d at 960 (O'Scannlain, J., concurring). Judge O'Scannlain pointed out that five circuits have concluded "that a sufficiency of the evidence claim presents a legal determination that must be evaluated through the AEDPA standard of review embodied in § 2254(d)(1)." *Id.* at 958-59 (collecting cases). Although the case could be made that state court decisions rejecting sufficiency of the evidence claims are properly reviewed pursuant to section 2254(d)(2)

(which asks whether a state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding") rather than section 2254(d)(1), the important point is that AEDPA does require some degree of additional deference. Indeed, "[n]o circuit has explicitly held that a state court's *Jackson* inquiry is exempt from AEDPA's standard of review." *Id.* at 959. Thus, regardless of which subsection of section 2254(d) governs the inquiry, the deference required by that statute would preclude relief in this case.

Had I been a member of the jury in Garcia's state court trial, I might well have rejected the gang enhancement. Indeed, had I been a judge on the California Court of Appeal, I might have found the evidence supporting that enhancement insufficient. But that is not the inquiry commanded by AEDPA. Pursuant to section 2254(d), we may grant habeas relief only if the California Court of Appeal's decision involved an "unreasonable application" of *Jackson* or an "unreasonable determination" of the facts. I conclude that the majority fails to accord the state court decision the deference it is due.

For these three reasons, I respectfully dissent.