Filed 11/2/20  P. v. Munoz CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B298485 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA468734) |
| v. | |
| MICHAEL MUNOZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard S. Kemalyan, Judge.  Affirmed.

Jamie Lee Moore, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Viet H. Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury found Michael Munoz guilty of robbery and found true the special allegation that the crime was committed to benefit a street gang. The trial court sentenced him to two years in prison for the robbery plus 10 years as a gang enhancement. Munoz contends (1) insufficient evidence supported the gang finding, (2) the court gave an improper jury instruction, and (3) if the gang enhancement stands, the matter should be remanded for resentencing on it. We disagree with all contentions, and thus affirm the judgment.

## BACKGROUND

On May 23, 2018, at approximately midnight, Francisco Fierros was working at a food truck on 18th Street and Union Avenue in Los Angeles, in an area claimed by the 18th Street criminal street gang and its subsidiary, the Red Shield Boys. Munoz, an 18th Street member with visible 18th Street tattoos, drove with his brother, who was not a gang member, to the back of the food truck, blocking it from leaving.

When Fierros approached the car he saw that Munoz held a black revolver. Munoz asked Fierros whether he was "paying a quota." Fierros replied, "No, not with anyone." Munoz stated that he wanted to speak with Jesus Hernandez, the food truck owner's son, to make arrangements about a quota. He then demanded $200 and Hernandez's phone number. Fierros gave Munoz all the money he had, $100, and offered to get Hernandez's phone number, but Munoz stated he would return for it. (He never did return.)

Munoz was charged with second degree robbery, and it was alleged he committed the crime to benefit 18th Street.

At trial, Fierros testified that Munoz and other 18th Street members had robbed him many times before. Gang members

2

demanded food from Fierros several times a week, and Munoz had robbed him about a dozen times.

For example, on May 30, 2015, Munoz, who was alone, approached the food truck window and lifted his sweater to display a gun tucked into his waistband. Munoz said he would kill Fierros if he called the police, made a throat slashing motion, and asked, "What day is it?" Fierros, gave him approximately $700 to $800. Between 2015 and 2018, Munoz robbed Fierros six to eight times, and warned him not to tell the police.

Los Angeles Police Officer Efrain Moreno testified as a gang expert. He said that 18th Street generates revenue by "taxing" vendors in its territory, i.e., forcing them to pay to operate the business. The gang uses the money to buy weapons and drugs. Moreno stated that a gang's reputation for violence keeps rival gangs from coming into its territory and dissuades members of the community from reporting crimes for fear of retaliation.

Based on a hypothetical question mirroring the facts of this case, Officer Moreno opined that the robbery was committed for the benefit of 18th Street. He said the robbery helped the gang establish fear in the community, and the money obtained was revenue for the gang.

A jury found Munoz guilty and found true that he committed the robbery to benefit a criminal street gang. (Pen. Code, § 186.22, subd. (b)(1)(C).)[1] The trial court sentenced him to the low term of two years for the robbery plus 10 years for the gang enhancement.

---

[1] All future statutory references are to the Penal Code.

# DISCUSSION

## A.  Sufficiency of Gang Evidence

The jury found Munoz was described by section 186.22, subdivision (b)(1), which prescribes an enhanced penalty for "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members."  Munoz contends insufficient evidence supported the gang finding.  We disagree.

In 1988, the Legislature found that "California is in a state of crisis which has been caused by violent street gangs whose members threaten, terrorize, and commit a multitude of crimes against the peaceful citizens of their neighborhoods."  (§ 186.21.) To "seek the eradication of criminal activity by street gangs," the Legislature enacted the Street Terrorism Enforcement and Prevention Act (the STEP Act), section 186.20 et seq.  (§ 186.21.)

The STEP Act prescribes enhanced penalties for "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members."  (§ 186.22, subd. (b)(1).)  The act defines a "criminal street gang" as "any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more [enumerated] criminal acts . . . having a common name or common identifying sign or symbol, and whose members individually or collectively engage in, or have engaged in, a pattern of criminal gang activity."  (§ 186.22, subd. (f).)

The STEP Act "does not criminalize mere gang membership; rather, it imposes increased criminal penalties only

4

when the criminal conduct is felonious and committed not only 'for the benefit of, at the direction of, or in association with' a group that meets the specific statutory conditions of a 'criminal street gang,' but also with the 'specific intent to promote, further, or assist in any criminal conduct by gang members.' " (*People v. Gardeley* (1996) 14 Cal.4th 605, 623-624.) Not every crime committed by gang members is intended to benefit the gang. But "if substantial evidence establishes that the defendant intended to and did commit the charged felony with known members of a gang, the jury may fairly infer that the defendant had the specific intent to promote, further, or assist criminal conduct by those gang members." (*People v. Albillar* (2010) 51 Cal.4th 47, 68; accord *People v. Villalobos* (2006) 145 Cal.App.4th 310, 322 ["Commission of a crime in concert with known gang members is substantial evidence which supports" a gang enhancement].) Gang enhancement elements must be established beyond a reasonable doubt by substantial evidence. (*People v. Vy* (2004) 122 Cal.App.4th 1209, 1224.)

Mere commission of a crime by a gang member does not establish the offense was gang related. (See *People v. Gardeley*, *supra*, 14 Cal.4th at pp. 623-624; *People v. Albarran* (2007) 149 Cal.App.4th 214, 227; *Garcia v. Carey* (9th Cir. 2005) 395 F.3d 1099, 1103; see also *People v. Ramon* (2009) 175 Cal.App.4th 843, 851; *In re Frank S.* (2006) 141 Cal.App.4th 1192, 1199 [defendant's possession of unlawful dirk or dagger for self-protection did not benefit his gang]; *People v. Killebrew* (2002) 103 Cal.App.4th 644, 652; *People v. Martinez* (2004) 116 Cal.App.4th 753, 757; *People v. Morales* (2003) 112 Cal.App.4th 1176, 1198 [gang members can commit crimes "on a frolic and detour unrelated to the gang"].)

"In considering a challenge to the sufficiency of the evidence to support an enhancement, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]  We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence.  [Citation.]  If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.  [Citation.]  'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.' " (*People v. Albillar*, *supra*, 51 Cal.4th at pp. 59-60.)  "To prove a gang allegation, an expert witness may testify about criminal street gangs." (*People v. Romero* (2006) 140 Cal.App.4th 15, 18.)

Taking all inferences in favor of the jury's finding, as we must, there was substantial evidence to support the inference that when Munoz robbed Fierros's food truck, he was doing so as part of a "protection" regime for the benefit of the 18th Street gang.  The truck was in 18th Street territory; Munoz was a current or former member of the gang with visible tattoos; the 18th Street gang had a taxing system whereby under threat of violent retaliation, its members extorted periodic payments—protection money—from businesses within the gang's territory; and the gang expert testified that such intimidation is how gangs enforce the silence of its protection victims, that is, so the victims do not call the police.

6

On May 23, 2018, when he robbed Fierros, Munoz was with another man and had used his vehicle to block Fierros from escaping. Munoz did not just point a revolver at his victim and demand $200. He also demanded the telephone number of the son of the food truck owner to "make arrangements" for a "quota." The gang expert testified that a "quota" was another word for the tax a gang typically imposes on local businesses within its territory to fund the gang's obtaining drugs and guns. The gang expert also testified that businesses pay these quotas to avoid violent retaliation by the gang.

Munoz had robbed Fierros six to seven times previously. In one such incident—on May 30, 2015—he again exposed his gun, demanded money and threatened to kill Fierros if he called the police. He also stated, "What day is it"—from which the jury could have inferred that Fierros was the victim of a protection ring that had expected periodic payments from him.

Although it is possible that Munoz robbed Fierros periodically as part of his own personal extortion regime, this is not the only conclusion supported by the evidence. The jury could have rejected such an inference, and probably did so, because Munoz would not be likely to extort a business in 18th Street territory without 18th Street knowledge and consent, as to do so would risk retaliation from the gang and Fierros calling the police.

Finally, Officer Moreno testified that crimes committed by gang members in gang territory benefit the gang by enhancing its reputation for violence and intimidation. A reasonable jury could conclude that Munoz taking advantage of his gang's reputation to commit an act in gang territory, which would benefit the gang, signaled he intended to benefit the gang.

For these reasons, we conclude the totality of the circumstances present evidence of intent sufficient to allow a reasonable juror to find the elements of the gang enhancement beyond a reasonable doubt.

## B.     Jury Instruction

Munoz contends the trial court erred in instructing the jury with CALCRIM No. 361, which informed the jury that it could consider his failure to explain or deny evidence during his testimony in evaluating that evidence.  Munoz argues he did not fail to explain or deny any evidence against him.  Munoz has forfeited the contention by failing to raise it below.

During trial, Fierros testified that he knew and feared Munoz for several years prior to 2015, and had been robbed by him many times.  Munoz testified that he knew Fierros since he was 10 years old, and they had friendly interactions.  He never asked Fierros for money or threatened him.

The trial court instructed the jury pursuant to CALCRIM No. 361 as follows:  "If the defendant failed in his testimony to explain or deny evidence against him, and if he could reasonably be expected to have done so based on what he knew, you may consider his failure to explain or deny in evaluating that evidence.  Any such failure is not enough by itself to prove guilt. The People must still prove the defendant guilty beyond a reasonable doubt.  [¶]  If the defendant failed to explain or deny, it is up to you to decide the meaning and importance of that failure."

Munoz offered no objection to the instruction.

The court also instructed the jury pursuant to CALCRIM No. 200, as follows:  "Some of the instructions may not apply depending on your findings about the facts of the case.  Do not

8

assume just because I give a particular instruction that I am suggesting anything about the facts. After you have decided what the facts are, follow the instructions that do apply to the facts as you find them."

Neither side mentioned CALCRIM No. 361 during closing argument.

A defendant who fails to challenge a jury instruction at trial forfeits any challenge on appeal. (*People v. Virgil* (2011) 51 Cal.4th 1210, 1260.) However, we may "review an instruction even absent an objection 'if the substantial rights of the defendant were affected thereby.' " (*People v. Hardy* (2018) 5 Cal.5th 56, 91.) Ascertaining whether the defendant's substantial rights were implicated requires some examination of the merits of the claim, at least enough to ascertain whether the claimed error would be prejudicial. (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1087.)

CALCRIM No. 361 "applies only when a defendant completely fails to explain or deny incriminating evidence, or claims to lack knowledge and it appears from the evidence that the defendant could reasonably be expected to have that knowledge." (*People v. Cortez* (2016) 63 Cal.4th 101, 117.) The instruction is not appropriate when a defendant's evidence merely contradicts the state's evidence, even when the evidence may seem incredible. " 'The instruction acknowledges to the jury the "reasonable inferences that may flow from *silence*" when the defendant "fail[s] to explain or deny evidence against him" and "the facts are peculiarly within his knowledge." ' " (*People v. Grandberry* (2019) 35 Cal.App.5th 599, 606.)

Here, CALCRIM No. 361 was arguably inappropriate, because Munoz's testimony did not completely fail to deny or

9

explain Fierro's incriminating testimony. On the contrary, Munoz directly contradicted Fierro. Respondent argues that Munoz failed to explain why Fierro would lie, but this just means he failed to persuade the jury Fierro was lying, i.e., to provide enough evidence to contradict him. Failure to persuade does not constitute complete failure to explain or deny.

But any error would have been harmless.

The erroneous presentation of CALCRIM No. 361 is reversible where an examination of the entire record establishes it is "reasonably probable" the defendant would have obtained a more favorable outcome had the error not occurred. (*People v. De Larco* (1983) 142 Cal.App.3d 294, 297.)

Here, there is no reasonable probability of a more favorable result had the trial court not instructed with CALCRIM No. 361. Even if the instruction was superfluous, the court also instructed the jury pursuant to CALCRIM No. 200 that some instructions may not apply, and not to assume that an instruction suggests anything about the facts. We must presume the jury followed this instruction and disregarded CALCRIM No. 361. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.)

There appearing no reasonable probability that CALCRIM No. 361 could have affected Munoz's substantial rights, his claim of error is forfeit.

## C.    Lesser Included Gang Enhancement

Section 186.22, subdivision (b)(1)(C) (hereafter subdivision (C)) authorizes an additional consecutive sentence of 10 years for any person convicted of committing a violent felony for the benefit of or at the direction of a criminal street gang. Section 186.22, subdivision (b)(1)(B) (hereafter subdivision (B))

10

authorizes an additional five-year term for commission of a serious felony to benefit a street gang.

An analogous scheme exists for firearm enhancements, with lesser, middle, and greater enhancements for using a firearm during the commission of a felony, depending on the severity of the use. (§ 12022.53, subds. (b), (c), & (d).)

On October 11, 2017, Governor Brown signed Senate Bill No. 620 (2017-2018 Reg. Sess.), which amended subdivision (h) of section 12022.53 to provide trial courts with the discretion to "strike or dismiss" a firearm enhancement or finding.[2] (Stats. 2017, ch. 682.)

Munoz was convicted of second degree robbery, which is considered both a serious and violent felony. However, the prosecutor charged him only under subdivision C, not B, the jury found the allegation to be true, and the trial court imposed a 10-year enhancement.

After sentencing, *People v. Morrison* (2019) 34 Cal.App.5th 217 (*Morrison*) held that a trial court that has statutory discretion to strike a firearm enhancement also has discretion under section 1385 to replace the enhancement with an uncharged lesser included enhancement. (*Morrison*, at pp. 222-223.)

Munoz observes that as is the case with firearm enhancements, a trial court enjoys discretion to strike a gang enhancement pursuant to subdivision (g) of section 186.22, which

---

[2] Subdivision (h) of section 12022.53 now provides in pertinent part: "The court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section."

11

provides: "Notwithstanding any other law, the court may strike the additional punishment for the enhancements provided in this section . . . in an unusual case where the interests of justice would best be served . . . ." Munoz contends the matter should be remanded to afford the court an opportunity to exercise its newfound discretion under *Morrison* to replace the 10-year gang enhancement with the lesser five-year gang enhancement. We disagree.

Three appellate courts strongly disagreed with *Morrison,* and the issue is now before our Supreme Court. (See *People v. Garcia* (2020) 46 Cal.App.5th 786, 790 (review granted June 10, 2020, S261772); *People v. Yanez* (2020) 44 Cal.App.5th 452, 458-460 (review granted Apr. 22, 2020, S260819); *People v. Tirado* (2019) 38 Cal.App.5th 637, 643 (review granted Nov. 13, 2019, S257658.) We also agree with *Garcia, Yanez* and *Tirardo* and disagree with *Morrison.*

First, section 12022.53, subdivision (h), states only that a court may "strike or dismiss" a firearm enhancement, not that it may strike an enhancement and substitute a lesser included one. Equivalently here, subdivision (g) of section 186.22 states only that a court may "strike" a gang enhancement. When the language of a statute is unambiguous we have no power to rewrite it. (*People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 192.)

Second, under the separation of powers doctrine, the decision of which sentencing enhancement to allege belongs to prosecutors, who are charged with executing the state's criminal law. (See *People v. Birks* (1998) 19 Cal.4th 108, 134.) Construing either subdivision (h) of section 12022.53 or subdivision (g) of section 186.22 to allow a court to substitute a lesser included

firearm or gang enhancement for a greater enhancement would intrude on executive powers.

The trial court had no discretion to substitute a lesser gang enhancement for a greater. Therefore remand is unnecessary.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

BENDIX, J.

13