Frank SILVA, Petitioner,

v.

Mike McDONALD, Respondent.

No. CV 11–04127–ODW (VBK).

United States District Court,
C.D. California,
Western Division.

Aug. 24, 2012.

Fred Browne, Fred Browne Law Offices, Los Angeles, CA, for Petitioner.

Herbert S. Tetef, CAAG—Office of Attorney General of California, Los Angeles, CA, for Respondent.

## ORDER ACCEPTING FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE

OTIS D. WRIGHT, II, District Judge.

Pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition for Writ of Habeas Corpus ("Petition"), the records and files herein, and the Report and Recommendation of the United States Magistrate Judge ("Report").

**IT IS ORDERED** that: (1) the Court accepts the Findings and Recommendations of the Magistrate Judge, and (2) the Court declines to issue a Certificate of Appealability ("COA").[1]

1. Under 28 U.S.C. § 2253(c)(2), a COA may issue "only if the applicant has made a substantial showing of the denial of a constitu-tional right." The Supreme Court has held that, to obtain a Certificate of Appealability under § 2253(c), a habeas petitioner must

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

VICTOR B. KENTON, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Otis D. Wright, II, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05–07 of the United States District Court for the Central District of California.

### INTRODUCTION

Petitioner, a California state prisoner represented by counsel in this action, filed a "Petition for Writ of Habeas Corpus by a Person in State Custody" pursuant to 28 U.S.C. § 2254 on May 13, 2011. Respondent moved to dismiss that Petition because Petitioner had a habeas petition pending in the California Supreme Court; but, on Petitioner's motion, this Court stayed this action so that Petitioner could finish exhausting his claims. Following the California Supreme Court's denial of that state habeas petition, Petitioner filed a First Amended Petition on December 14, 2011. Respondent filed an Answer to the First Amended Petition, and Petitioner filed a Reply to Respondent's Answer.

Briefing having now been deemed completed, the matter is ready for decision. Having reviewed the allegations of the First Amended Petition and the matters set forth in the record and the parties' filings, it is recommended that the First Amended Petition be denied and the matter be dismissed with prejudice.

### PROCEDURAL HISTORY

On November 21, 2008, a jury in the Los Angeles County Superior Court convicted Petitioner of the attempted murder of Jeremiah Mitchell ("J.M.") (count 1, California Penal Code ["P.C."] §§ 664/187(a)) and the attempted murder of Daeveon Jones ("D.J.") (count 2, P.C. §§ 664/187(a)). (See Clerk's Transcript, Volume 2 of 2 ["2 CT"] 385–88, 460–61.) The jury found that both attempted murders were committed willfully, deliberately, and with premeditation within the meaning of P.C. § 664(a). The jury also found that in the commission of each attempted murder, Petitioner personally and intentionally fired a gun (P.C. § 12022.53(c)); Petitioner personally and intentionally fired a gun proximately causing great bodily injury (P.C. § 12022.53(d)); and a principal personally and intentionally fired a gun proximately causing great bodily injury (P.C. § 12022.53(e)(1)). The jury also found that each offense was committed for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members (P.C. § 186.22(b)(1)(C)). (See Lodgment 2 at 4; 2 CT2 385–88.)

At sentencing, on count 1 the state court considered the gang and firearm enhancements and imposed a total sentence of 40 years to life; and on count 2 the court imposed the same sentence, to run concurrently to the sentence on Count 1. Sentences on remaining firearm enhancements were imposed and stayed. (See Reporter's

show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further'." *Slack v. McDaniel*, 529 U.S. 473, 483–84, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) (internal quotation marks omitted);

see also *Miller–El v. Cockrell*, 537 U.S. 322, 336, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). After review of Petitioner's contentions herein, this Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right, as is required to support the issuance of a COA.

Transcript, Volume 6 of 6 ["6 RT"] 3315–16.) Taken together, Petitioner's total sentence was for 40 years to life with the possibility of parole. (Lodgment 2 at 4.)

Petitioner appealed to the California Court of Appeal (Lodgment 1); and on November 19, 2009, the Court of Appeal denied that appeal in a reasoned, unpublished opinion. (Lodgment 2.) Petitioner filed a Petition for Review in the California Supreme Court (Lodgment 3); and on February 18, 2010, the California Supreme Court denied that appeal without comment or citation to authority. (Lodgment 4.)

On May 12, 2011, Petitioner filed a petition for a writ of habeas corpus in the California Supreme Court. (Lodgment 5.)

The next day, on May 13, 2011, Petitioner initiated the instant federal action by filing his original habeas petition. On June 16, 2011, Respondent filed his Motion to Dismiss the Petition on the ground that the Petition was unexhausted due to Petitioner's pending habeas petition in the California Supreme Court. On July 25, 2011, this Court issued a Report and Recommendation, recommending that the Petition be dismissed without prejudice for lack of exhaustion; but on August 15, 2011, Petitioner filed Objections to the Report and Recommendation and moved to stay the proceedings. On August 19, 2011, this Court vacated the Report and Recommendation; and on November 14, 2011, this Court issued a Memorandum and Order granting Petitioner a stay under *Kelly v. Small,* 315 F.3d 1063 (9th Cir.2002).

On December 5, 2011, Petitioner filed a "Notice of Decision," notifying this Court that on October 12, 2011, the California Supreme Court had denied Petitioner's pending state habeas petition. On December 14, 2011, Petitioner filed the instant First Amended Petition. ("FAP"). On April 23, 2012, Respondent filed an Answer to the First Amended Petition ("Answer"), together with a Memorandum of Points and Authorities attached in support of the Answer ("MPA"); and on June 22, 2012, Petitioner filed a Reply ("P's Reply") to Respondent's Answer.

### *FACTUAL BACKGROUND*

The following factual background is quoted from the California Court of Appeal's reasoned decision denying Petitioner's appeal: [1]

> On the evening of September 3, 2005, a van drove past 15–year–old J.M. [*i.e.,* Jeremiah Mitchell] and 17–year–old D.J. [*i.e.,* Daeveon Jones] as they left a store. D.J. looked at the van and the three men in the van looked at D.J. D.J. and J.M. walked into an alley. The van entered the alley and the driver extinguished its headlights. Petitioner leaned out of the front passenger window holding a gun and began shooting at J.M. and D.J. Someone in the rear of the van also fired a gun. The two guns sounded different. D.J. was shot in the stomach and fell to the ground. Petitioner got out of the van and walked toward D.J. while continuing to shoot. D.J. got up and ran away. Neither D.J. nor J.M. had a gun, and the men in the van did not say anything before opening fire. J.M. lifted D.J.'s shirt and saw a single bullet hole in D.J.'s stomach. A Los Angeles Police Department officer who heard the shots drove to the scene and chased the van. When the van stopped, Petitioner got out of the front passenger seat, Edward Delacruz got out of the back seat carrying a shotgun, and Robert Contreras left the driver's

---

1. This Court has substituted the term "Petitioner" for the term "defendant" throughout this Report and Recommendation in most of the instances where this Court quotes the Court of Appeal's opinion and the Court of Appeal refers to Petitioner as "defendant."

seat. The police apprehended all three men. Petitioner dropped a loaded nine-millimeter semiautomatic handgun just before an officer reached him.

D.J. was in the hospital for six days and required three operations to treat his injuries. J.M.'s finger and head were injured. Detective Tommy Thompson testified that J.M.'s wounds were "pretty significant" and were "consistent" with being inflicted by bird shot expelled from a shotgun shell. The police found an expended shotgun shell casing, an unexpended shotgun shell containing bird shot, and three expended nine-millimeter casings at the scene of the shootings. The nine-millimeter casings had been ejected from the handgun Petitioner dropped. The expended shotgun shell had been ejected from a shotgun Delacruz was holding when the police caught him. The unexpended shotgun shell had been cycled through the same shotgun. The prosecution's firearm expert testified that when a birdshot shell is fired from a shotgun, hundreds of tiny spherical pellets disperse in a spreading pattern. If any of these pellets strike an object, they will either "leave an imprint" on it or pass through it.

The shooting occurred within territory claimed by the East Coast Crips gang at a location where East Coast Crips gang members were known to congregate. The alley in which D.J. and J.M. were shot was covered with East Coast Crips gang graffiti. Petitioner, Delacruz, and Contreras were members of the Florencia 13 gang, which was engaged in a longstanding "war" with the East Coast Crips gang. Each of the gangs committed drive-by shootings, assaults, and murders against the other gang. The prosecution's gang expert opined that the Florencia 13 gang members identified the victims as "possible rival gang member[s]" and sought to eliminate them for the benefit of the Florencia 13 gang. Eliminating them would reduce the ranks of the East Coast Crips gang, enhance the reputation of the Florencia 13 gang as fearless, and intimidate the community so as to permit Florencia 13 to commit crimes without citizens reporting them to the police.

Petitioner testified at trial that he was 16 years old and a member of the Florencia 13 gang at the time of the shooting. He spent the day drinking and smoking marijuana at a Florencia 13 gang hangout with other members of his gang, including Petitioner's friends Delacruz and Contreras. Someone handed Petitioner a gun for protection against rival gang members. Petitioner, Delacruz, and Contreras drove in Petitioner's van to get food at a taco truck Petitioner knew was within the territory claimed by the East Coast Crips gang. Just before they drove away from the gang hangout, Petitioner noticed that Delacruz had a shotgun. Petitioner forgot to take the gun out of his pocket before they left the hangout, so he put it on the floor of the van. When Petitioner, Delacruz, and Contreras left the taco truck, they saw three African–American men throwing Crips gang signs. Contreras drove past them slowly, made a U-turn, and drove up to the alley. Petitioner heard someone in the van say "gun" and saw the same three guys down the alley. Petitioner saw one of the guys reach into his waistband and feared he was retrieving a gun. Petitioner grabbed his own gun from the floor of the van, stuck it out the passenger side window, and fired three times without aiming. Contreras sped away immediately. Petitioner denied getting out of the van to shoot. Petitioner admitted that he knew that the site of the shooting was an East Coast Crips hangout.

(Lodgment 2 at 2–4; bracketed material added.)

### PETITIONER'S CONTENTIONS

The First Amended Petition sets forth the following grounds for relief:

1. The evidence was insufficient to support the firearm allegation under California Penal Code § 12022.53(d) that Petitioner personally and intentionally discharged a firearm at Jeremiah Mitchell because Petitioner did not fire the shots that caused Mitchell's injuries; and the verdict form may have confused the jury about the evidence necessary to find the enhancement true.

2. The evidence was insufficient to sustain the gang allegation under California Penal Code § 186.22(b)(1)(C) that Petitioner committed the attempted murders for the benefit of a criminal street gang.

3. Petitioner's sentence of 40 years to life with the possibility of parole for the two attempted murders violates the Eighth Amendment's prohibition against cruel and unusual punishment because Petitioner was only 16 years old when the crimes were committed. (See FAP at 5–6.)

### DISCUSSION

### I

### STANDARD OF REVIEW

#### A. AEDPA Standards.

The Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted on April 24, 1996 and applies to all federal petitions for writs of habeas corpus filed after that date. *Lindh v. Murphy*, 521 U.S. 320, 326–27, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). As explained by the Supreme Court, the AEDPA "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *see also Miller–El v. Cockrell*, 537 U.S. 322, 337, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) ("Statutes such as AEDPA have placed more, rather than fewer, restrictions on the power of federal courts to grant writs of habeas corpus to state prisoners.").

Under the AEDPA, a federal court may not grant a writ of habeas corpus on behalf of a person in state custody "with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

Section "2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). The Supreme Court has explained that:

> [u]nder the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412–13, 120 S.Ct. 1495; *see also Brown v. Payton*, 544 U.S. 133, 141, 125 S.Ct. 1432, 161 L.Ed.2d 334 (2005); *Weighall v. Middle*, 215 F.3d 1058, 1061 (9th Cir.2000) (discussing *Williams* ).

■ While Supreme Court precedent is the only authority that is controlling under the AEDPA, this Court may look to Ninth Circuit case law as persuasive authority "for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law." *Howard v. Clark*, 608 F.3d 563, 568 (9th Cir.2010) (citation omitted).

Further, the AEDPA provides that state court findings of fact are presumed to be correct unless a petitioner rebuts that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

■ Here, the California Court of Appeal's opinion denying Grounds One and Two on direct appeal is the last reasoned decision from the state courts. Accordingly, this Court "looks through" the California Supreme Court's silent denial of those claims to the Court of Appeal's opinion to determine if habeas relief is warranted under AEDPA on those claims. *See Mendez v. Knowles*, 556 F.3d 757, 767 (9th Cir.2009) (citing 28 U.S.C. § 2254(d) and *Ylst v. Nunnemaker*, 501 U.S. 797, 804– 806, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991)). Petitioner presented Ground Three in his habeas petition to the California Supreme Court; and the parties do not dispute that the California Supreme Court denied that claim on the merits.[2] Accord-

2. Respondent has apparently not lodged a copy of the California Supreme Court's denial of Petitioner's state habeas petition that was filed in that case, no. S193036. Respondent has lodged "Lodgment 6," which is apparently a "Case Summary" for case no. S193036, printed out from the California Appellate Courts' Case Information website at "http:// appellatecases.courtinfo.ca.gov." That lodgment reflects that case no. S193036 was an "original proceeding—habeas"; but that lodgment does not offer any other pertinent information about that habeas case, and, in particular, does not set forth the rationale for the California Supreme Court's denial of that petition.

However, Respondent notes that attached to Petitioner's "Notice of Decision" was another print-out from the California Appellate Courts' website labeled "Docket (Register of Actions)" for case no. S193036; and that print-out states "Petition for writ of habeas corpus denied." Under the heading "Notes," the print-out also states "The petition for writ of habeas corpus is denied without prejudice to the filing of an original petition in the trial court for any relief to which petitioner might be entitled following our resolution of *People v. Caballero*, S190647. (*See* Petitioner's "Notice of Decision," Docket No. 13, attachment thereto.)

This Court has conducted its own further research on the California Appellate Courts' website, and discovered that *"People v. Caballero*, S190647" has apparently not been decided as of the time that this Report and

Recommendation is being drafted. The "Case Summary" page at that website for case no. S190647 states "Petition for review after the Court of Appeal affirmed a judgment of conviction of criminal offenses. This case presents the following issue: Does a sentence of 110 years to life for a juvenile convicted of committing non-homicide offenses constitute cruel and unusual punishment under the Eighth Amendment on the ground it is the functional equivalent of a life sentence without the possibility of parole? (*See Graham v. Florida* (2010) 560 U.S. ——, 130 S.Ct. 2011, 176 L.Ed.2d 825.)" *See id.*

That docket also states that on June' 28, 2012, the California Supreme Court ordered further briefing in *Caballero*, case no. S190647. The docket states, in pertinent part: "In *Miller v. Alabama* (June 25, 2012, Nos. 10–9646, 10–9647) —— U.S. —— [132 S.Ct. 2455, 183 L.Ed.2d 407, 2012 U.S. Lexis 4873; 2012 WL 2368659], the United States Supreme court held that a sentence of 'mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on cruel and unusual punishments.' (*Miller, supra,* —— U.S. —— at p. ——, [132 S.Ct. at 2460, 2021 U.S. Lexis 4873 at p. \*2].) Although *Miller* addresses the sentencing question in the context of homicide crimes, as opposed to the nonhomicide crime at issue in *People v. Caballero* (S190647), the high court's holding relies on *Graham v. Florida* (2010) 560 U.S. —— [130 S.Ct. 2011], a case we consider in *People v. Caballero*. The parties are requested to brief the effect, if any, of *Miller v. Alabama*

ingly, AEDPA's deferential standard applies to Ground Three as well. *See Harrington v. Richter,* ⸺ U.S. ⸺, 131 S.Ct. 770, 784–85, 178 L.Ed.2d 624 (2011) (silent state court denial presumed to be on the merits in absence of any indication to the contrary) (citing, *inter alia, Ylst*). However, since there is no reasoned decision from the state courts on this claim, this Court will conduct its own "independent review" of the record to determine whether the state court decision was contrary to, or an unreasonable application of, controlling United States Supreme Court precedent. *See Allen v. Ornoski,* 435 F.3d 946, 954–955 (9th Cir.2006) (citing, *inter alia, Delgado v. Lewis,* 223 F.3d 976, 982 (9th Cir.2000)). "Independent review" is not the equivalent of de novo review, but is a style of review which considers whether the state court decision was "objectively reasonable"; and even though the federal habeas court independently reviews the record, it still defers to the state court's ultimate decision. *See id.* (citing *Williams*).

### B. *Grounds One and Two: Insufficient Evidence, Incorrect Verdict Form.*

Petitioner states in his Reply that he was convicted of the attempted murder of Jeremiah Mitchell on an "aider and abettor theory." (P's Reply at 9.) Petitioner admits that "[h]e and other known gang members confronted and shot at rival gang members, seriously injuring them." (P's Reply at 14.) Petitioner states that he "testified that he thought one of the rival gang members was reaching for a gun to shoot him, so he panicked and fired three shots out the window of the van until the

men retreated." (*Id.,* citing 4 RT 1901–05.)

However, in Ground One, Petitioner argues that, notwithstanding that conviction for aiding and abetting Mitchell's attempted murder, there is insufficient evidence to support the firearm finding on Count 1 that Petitioner "personally and intentionally discharged a firearm, to wit, a HANDGUN, which proximately caused great bodily injury to JEREMIAH MITCHELL within the meaning of Penal Code Section 12022.53(d)." (*See* 2 CT 38 6; capitalization in original.) Petitioner argues that it was not possible that the shots he fired caused Mitchell's injuries because Petitioner fired a nine-millimeter handgun, whereas Mitchell was injured by shotgun pellets which could only have been fired by Petitioner's co-defendant Delacruz. (*See* FAP at 5, P's Reply at 8.)

This Court also construes Ground One to contain a second sub-ground that the verdict form misled the jury: Petitioner notes that the verdict form alleged that Petitioner "proximately caused great bodily injury" specifically to Mitchell, and not merely to "a person," as set forth under California law; but Petitioner argues that the allegation could not be true because Petitioner did not fire the gun that injured Mitchell, and therefore it is "a factual and legal impossibility" that there was sufficient evidence to support the true finding on the § 12022.53(d) enhancement. (P's Reply at 8–9.)

In Ground Two, Petitioner argues that the evidence was insufficient to support the gang findings on the two attempted murder counts pursuant to P.C. § 186.22(b)(1)(C). (FAP at 5.)

on this court's future decision in *People v. Caballero.*" (Docket, S190647.)

Taken together, it appears that the California Supreme Court reached, considered, and

rejected Petitioner's argument that his sentence constitutes cruel and unusual punishment. Accordingly, AEDPA deference applies to that decision and to Ground Three here.

## 1. *Applicable Federal Law.*

 The federal constitutional standard for assessing the sufficiency of the evidence in support of a conviction is the *Jackson* standard; and under that standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original). In applying the *Jackson* standard, a federal court refers to the substantive elements of the criminal offense as defined by state law at the time that a petitioner committed the crime and was convicted, and looks to state law to determine what evidence is necessary to convict on the crime charged. *See Jackson,* 443 U.S. at 324 n. 16, 99 S.Ct. 2781; *Emery v. Clark,* 643 F.3d 1210, 1214 (9th Cir.2011) (per curiam); *see also Hernandez v. Duncan,* 395 Fed.Appx. 380, 381–82 (9th Cir.) (unpublished) (habeas court applying *Jackson* standard analyzes elements of state law crime as set forth at time petitioner committed and was convicted of offense), *cert. denied,* —— U.S. ——, 131 S.Ct. 577, 178 L.Ed.2d 421 (2010).

 "A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. v. Allen,* 408 F.3d 1262, 1274 (9th Cir.2005). All evidence must be considered in the light most favorable to the prosecution. *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781. "The reviewing court must respect the province of the jury to determine the credibility of witnesses, resolve evidentiary · conflicts, and draw reasonable inferences from proven facts by assuming that the jury resolved all conflicts in a manner that supports the verdict." *Jones v. Wood,* 114 F.3d 1002, 1008 (9th Cir.1997).

 Furthermore, under AEDPA, federal courts must "apply the standards of *Jackson* with an additional layer of deference." *Juan H.,* 408 F.3d at 1274; *see also Boyer v. Belleque,* 659 F.3d 957, 964 (9th Cir.2011) (when reviewing sufficiency of evidence under *Jackson* where AEDPA applies, "there is a double dose of deference that can rarely be surmounted"). Even where a state court decision does not cite to or discuss the relevant *Jackson* standard, habeas relief is not warranted "so long as neither the reasoning nor the result of the state-court decision contradicts" Supreme Court precedent. *Juan H.,* 408 F.3d at 1275 n. 12 (quoting *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002)).

 Lastly, where a mistake or ambiguity in a verdict form is at issue, the mistake or ambiguity should be considered in its context and with consideration of all of the circumstances at trial. *See Skains v. California,* 386 Fed.Appx. 620, 622–23 (9th Cir.) (unpublished) (citing *Lowenfield v. Phelps,* 484 U.S. 231, 237, 240, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988)), *cert. denied,* —— U.S. ——, 131 S.Ct. 824, 178 L.Ed.2d 562 (2010). *See also Hoyle v. Ada County,* 501 F.3d 1053, 1064 (9th Cir.2007) (issue of whether court correctly interpreted verdict form must be examined in light of elements of crime under state law). Furthermore, mistaken or ambiguous verdict forms should generally be analyzed for prejudice under the habeas harmless error standard, which asks whether the mistake or ambiguity had a substantial and injurious effect or influence on the jury's verdict. *See Fry v. Pliler,* 551 U.S. 112, 117–22, 127 S.Ct. 2321, 168 L.Ed.2d 16 (2007) (in § 2254 proceedings, court must assess prejudicial impact of constitutional error under *Brecht* standard, which asks whether error had a substantial and injurious effect or influence on jury's verdict and

resulted in "actual prejudice") (discussing *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)). *See also Medina v. Woodford,* No. C–06–2480 EMC, 2012 WL 177567, at *20 (N.D.Cal. 2012) (verdict form error properly analyzed for harmlessness); *Camacho v. Rosa,* No. CV 09–5527 RSWL (RZ), 2010 WL 3952873, at *2–3 (C.D.Cal.2010) (stating that under California law intent of jury, not physical verdict form, is determinative of validity of conviction; and applying *Brecht* to find that, where trial court erred by giving wrong verdict form to jury, error was harmless because both counsel and judge referred to correct charge throughout trial and jury was properly instructed). *Cf. also Goins v. McDonald,* No. 1:09–CV–00882 LJO GSA HC, 2009 WL 4048601, at *7, *11 (E.D.Cal. 2009) (finding no clearly established Supreme Court precedent mandating that "typographical errors on a verdict form result in an unconstitutional sentence" or requiring sentence to be "consistent with the verdict form rather than as set forth in the charging document and jury instructions").

### 2. *California Court of Appeal Opinion.*

The Court of Appeal denied Ground One, stating that "[i]mposition of a [§ 12022.53(d) ] enhancement requires that the defendant personally and intentionally fired a gun in the commission of an offense and that the defendant's firing of the gun constituted a proximate cause of the death or great bodily injury suffered *by a person other than an accomplice.*" (Lodgment 2 at 5; underline added.) However, the Court of Appeal noted that "the defendant need not personally inflict the great bodily injury or death, just proximately cause it ... [a]nd the person injured or killed need not be the victim of the offense to which the enhancement is attached." (*Id.,* citing *People v. Oates,* 32 Cal.4th 1048, 1055– 1056, 12 Cal.Rptr.3d 325, 88 P.3d 56 (2004)

and *People v. Bland,* 28 Cal.4th 313, 336– 338, 121 Cal.Rptr.2d 546, 48 P.3d 1107 (2002).) "Thus, where a defendant fired two shots at a group of five people, striking one of them, a [P.C. § 12022.53(d) ] enhancement was properly imposed for each of five counts of attempted murder." (*Id.,* citing *Oates,* 32 Cal.4th at 1055–56, 12 Cal.Rptr.3d 325, 88 P.3d 56; bracketed material added.) The Court of Appeal went on to find that:

> Ample evidence, including Petitioner's own testimony, established that Petitioner fired his gun. Given the nature of the single bullet wound D.J. suffered, jurors could reasonably infer that a bullet from Petitioner's gun—not pellets from Delacruz's shotgun—struck D.J. It was undisputed that D.J. suffered an extremely serious wound that required a significant hospital stay and several surgeries to repair. This was sufficient to support the jury's finding on the section 12022.53, subdivision (d) enhancement allegation attached to the charge of attempting to murder J.M.

(Lodgment 2 at 5.)

The Court of Appeal went on to note that the verdict form, instead of stating simply that Petitioner's firing of the gun "constituted a proximate cause of the death or great bodily injury suffered *by a person other than an accomplice,*" stated that Petitioner "personally and intentionally discharged a firearm, to wit, a HANDGUN, which proximately caused great bodily injury *to JEREMIAH MITCHELL* within the meaning of Penal Code Section 12022.53(d) [ ]." (*See* 2 CT 386; Lodgment 2 at 4–6; underlines added.) The Court of Appeal noted that this wording was "erroneous and unnecessarily restrictive," since it may have led the jury to conclude that Petitioner's firing of his gun was or needed to be a "proximate cause" of *Mitchell's* injuries, and not merely of Jones's injuries.

(*See* Lodgment 2 at 5–7.) Nevertheless, the Court of Appeal found that any ambiguity was harmless, stating that under California law "[v]erdict forms should be read in light of the information, the plea entered, the issues submitted to the jury, and the instructions of the court," and concluding that, in light of the evidence and the jury instructions at trial, "the jury would have necessarily made the same finding on the enhancement allegation if the verdict form had been worded without reference to [Mitchell] and in the statutory terms of injury 'to any person other than an accomplice.'" (Lodgment 2 at 6; bracketed material added.) Accordingly, the Court of Appeal stated that "[w]e conclude that the reference to [Mitchell's] injury in the verdict form was a technical defect that could be disregarded without prejudice to Petitioner's rights." (*Id.*)

As to Ground Two, Petitioner's argument that the evidence was insufficient to support the gang findings, the Court of Appeal stated that: "Section 186.22, subdivision (b), provides a sentence enhancement for anyone convicted of a felony 'committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members.'" (Lodgment 2 at 7.) The Court of Appeal noted that Petitioner contended that insufficient evidence supported the § 186.22(b) enhancements because the evidence did not show that Petitioner committed the crimes with the specific intent to "promote, further or assist in any criminal conduct by gang members' *apart from the current conviction.*" (*Id.*; underline added.) The Court of Appeal also noted that Petitioner based this argument on the Ninth Circuit's interpretation of § 186.22(b) as set forth in *Garcia v. Carey,* 395 F.3d 1099 (9th Cir. 2005). *Id.* However, the Court of Appeal expressly rejected the reasoning of *Garcia,* stating that the statute did not require a

specific intent to facilitate conduct by gang members *other than* the charged offense, and stating that "[a]part from his attempt to modify the elements of the gang enhancement statute, Petitioner does not contest the sufficiency of the evidence." (Lodgment 2 at 7.)

The Court of Appeal went on to note that the evidence to support the gang enhancements was sufficient in any event:

Although Petitioner's group did not proclaim their gang affiliation at the time of the shootings, the circumstances surrounding the crimes support a finding that Petitioner specifically intended to promote, further, or assist in criminal conduct by gang members. Petitioner was an admitted member of Florencia 13 who was hanging out with other members of his gang. Carrying a gun, he and two other Florencia 13 members drove into territory they knew was claimed by the rival East Coast Crips gang, with which Florencia 13 was "at war." One of Petitioner's companions [*i.e.,* Delacruz] took a shotgun with him on the drive. According to Petitioner, he saw African–Americans throwing Crips gang signs and the driver reversed course to pursue the men into an alley. This strongly implies that Petitioner and his companions believed the men were members of a Crips gang and were engaging in a gang-motivated response to the display of gang signs. Petitioner and one of his two companions then shot at the African–Americans they were pursuing. Although Petitioner claimed he fired because he thought one of the victims had a gun, this claim was inconsistent with Petitioner's more brazen conduct as described by the victims: Petitioner leaned his body out of the van window to shoot and got out of the van to continue shooting at [Jones] after [Jones] fell to the ground. The jury could find beyond a reasonable doubt

that the shooting was gang-motivated and that Petitioner's participation in it along with other members of his gang was intended to promote, further, or assist in criminal conduct by gang members.

(Lodgment 2 at 7; bracketed material added.)

### 3. *Analysis.*

■ Under the AEDPA, this Court must defer to the California Court of Appeal's interpretation and application of California law. *See Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("federal habeas corpus relief does not lie for errors of state law"); *Hubbart v. Knapp,* 379 F.3d 773, 779–80 (9th Cir.2004) ("[f]ederal habeas corpus relief is generally unavailable for alleged error in the interpretation or application of state law") (citing, *inter alia, Estelle* ). Likewise, this Court defers to a state court's factual findings and presumes those findings are correct unless a petitioner can rebut that presumption by clear and convincing evidence. *See Moses v. Payne,* 555 F.3d 742, 746 (9th Cir.2009) (citing 28 U.S.C. § 2254(e)(1)).

■ In light of these authorities, the California Court of Appeal's finding, that P.C. § 12022.53(d) applies where the evidence is sufficient to prove that a defendant's firing of a gun was a proximate cause of great bodily injury to any person other than an accomplice, is binding on this Court. *See Oates,* 32 Cal.4th at 1055–56, 12 Cal.Rptr.3d 325, 88 P.3d 56 (finding that imposing multiple enhancements for a single injury is proper under § 12022.53(d)). Given the state of the law, it is clear that a rational juror could have found that Petitioner's admitted conduct satisfied the elements of this enhancement. This Court's own review of the record confirms the Court of Appeal's factual findings, and, in particular the evidence that Petitioner admitted he was at the

scene and fired the nine-millimeter handgun. (*See* 4 RT 1904, 1930.) Daeveon Jones identified Petitioner as the person who shot him (3 RT 1559, 1583); and Jones had a bullet hole in his stomach that was more consistent with a nine-millimeter wound than with a wound from a shotgun. (3 RT 1221.) Since Petitioner was clearly a proximate cause of Jones's injuries, under California law Petitioner could also be found liable for the discharge of the nine-millimeter handgun as to Mitchell as well. *See Oates,* 32 Cal.4th at 1055–56, 12 Cal. Rptr.3d 325, 88 P.3d 56.

■ Furthermore, there is no doubt that Petitioner was not prejudiced by the mis-worded verdict form. In this Court's view, the error was more likely to inure to Petitioner's benefit, since it stated that Petitioner was liable under § 12022.53(d) only if he proximately caused great bodily injury to Mitchell. The jury's "true" finding must mean that they did not allow the narrowly-worded verdict form to override the charges and the jury instructions that they had received. (*See, e.g.,* jury instructions at 2 CT 350; 5 RT 2416–17, 2419–20.)

As to Ground Two, Respondent confirms the Court of Appeal's observation that, in his direct appeals to the California courts, Petitioner sought to rely on the Ninth Circuit's interpretation of § 186.22 as set forth in *Garcia v. Carey,* 395 F.3d 1099 (9th Cir.2005), as well as the later opinion in *Briceno v. Scribner,* 555 F.3d 1069 (9th Cir.2009). (*See, e.g.,* Lodgment 1 at 19–24; Lodgment 3 at 13–19.) Applying the *Jackson* standard, *Garcia* had held that the evidence was insufficient to support a gang enhancement pursuant to P.C. § 186.22(b)(1) where there was no evidence that the petitioner's crime "was committed with the specific purpose of furthering other *gang* criminal activity," that is, activity other than the charged crime. *Garcia,* 395 F.3d at 1103 (underline add-

ed). In *Briceno*, the Ninth Circuit confirmed that "*Garcia* concluded . . . that the specific intent required under § 186.22(b) must be to facilitate *other* criminal activities by gang members." *Briceno*, 555 F.3d at 1079 n. 3.

As Respondent notes, and Petitioner concedes in his Reply, the California Supreme Court subsequently resolved the issue in *People v. Albillar*, 51 Cal.4th 47, 119 Cal.Rptr.3d 415, 244 P.3d 1062 (2010); and the Ninth Circuit has recognized the resolution, stating that *Albillar* held that the specific intent to promote, further, or assist in any criminal conduct by gang members is unambiguous and applies to *any* criminal conduct, without a further requirement that the conduct be "apart from" the criminal conduct underlying the offense of conviction sought to be enhanced. *Emery v. Clark*, 643 F.3d at 1215 (emphasis added). Accordingly, the Ninth Circuit stated, *Albillar* had specifically overruled *Briceno* and *Garcia*. *Id*. Thus, to sustain a gang enhancement under the *Jackson* standard, there must be evidence upon which a rational trier of fact could find that a defendant acted with the specific intent to promote, further, or assist in some type of criminal conduct by gang members, which may also include the crime of conviction. *Emery*, 643 F.3d at 1216.

■ In light of *Albillar* and *Emery*, it is clear that the evidence in support of Petitioner's gang enhancement satisfies the *Jackson* standard. Petitioner was an admitted member of the Florencia 13 gang. (*See* 4 RT 1885–86.) Petitioner's gang was in a "war" with the East Coast Crips gang. (4 RT 1914.) Petitioner and other Florencia 13 gang members drove into the territory of the East Coast Crips gang armed with firearms. (4 RT 1926–28.) According to Petitioner, they pursued African–American men throwing Crips gang signs. (4 RT 1897–1902.) Petitioner and Delacruz then shot at the men. (3 RT 1212–16, 1559, 1583.) As the California Court of Appeal also noted, Petitioner's explanation for the shooting—that he fired because he thought one of the men they were pursuing had a gun—was inconsistent with the brazen conduct described by the victims, in which Petitioner leaned out of a window of the van to shoot at his victims, and then got out of the van to keep shooting at Jones after he had fallen to the ground. (*See* 3 RT 1210–11, 1216, 1559–63, 1591.) Taken together, there was certainly enough evidence for a juror to rationally decide that Petitioner's conduct satisfied the elements of P.C. § 186.22(b).

### C. *Ground Three: Sentence as Cruel and Unusual Punishment.*

In Ground Three, Petitioner argues that his sentence of 40 years to life constitutes cruel and unusual punishment because he was only 16 years old at the time of the shooting; because the crime did not result in a homicide; and because he will be almost 60 years old before he is eligible for parole, a term that he argues is "equivalent" to a sentence of life without parole.[3]

---

**3.** This Court notes that there is an apparent discrepancy about precisely when Petitioner will be eligible for parole. Respondent states that "Petitioner will be eligible for parole when he is fifty-six years old." (MPA at 17.) At the sentencing hearing, the state trial court stated that "the finding of true of the gang allegation 186.22(b)(5) means that instead of an additional punishment it just means that the minimum parole eligibility is 15 years." (*See* 6 RT6 3315.) Petitioner himself asserts that he will not be eligible for parole "until he is almost 60 years old with no meaningful opportunity for early release based upon maturity, rehabilitation or other factors." (FAP at 6.) This Court will assume that Petitioner will not be eligible for parole "until he is almost 60 years old" since, if this projected parole-eligibility date does not offend the Eighth Amendment, an earlier parole-eligibility date would not either.

Petitioner also complains that the trial court failed to consider mitigating factors, such as Petitioner's youth and background, in imposing the sentence. (*See, e.g.,* P's Reply at 12, citing *Graham v. Florida,* —— U.S. ——, —— – ——, 130 S.Ct. 2011, 2029–30, 176 L.Ed.2d 825 (2010)).

### 1. *Applicable Federal Law.*

■■■ The Eighth Amendment proscribes the infliction of "cruel and unusual punishments." U.S. Const. Amend. VIII; *Kennedy v. Louisiana,* 554 U.S. 407, 418, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008). The Supreme Court has stated that the Eighth Amendment contains a " 'narrow proportionality principle' that 'applies to noncapital sentences.' " *Ewing v. California,* 538 U.S. 11, 20, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003) (rejecting challenge to recidivist sentencing scheme under California's Three Strikes Law where Petitioner was sentenced to 25 years to life for theft of a few golf clubs) (quoting *Harmelin v. Michigan,* 501 U.S. 957, 996, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991)). Thus, in non-capital cases, the Eighth Amendment prohibits "extreme" sentences that are "grossly disproportionate" to the severity of the crime. *Harmelin,* 501 U.S. at 1001, 111 S.Ct. 2680 (citation and internal quotation marks omitted); *Nunes v. Ramirez–Palmer,* 485 F.3d 432, 439 (9th Cir. 2007) ("gross disproportionality principle" is clearly established federal law under AEDPA for purpose of analyzing whether sentence constitutes cruel and unusual punishment).

■■■ In determining whether a sentence for a term of years is "grossly disproportionate" to a defendant's particular crime, a court must begin by comparing the gravity of the offense and the severity of the sentence. *Graham v. Florida,* 130 S.Ct. at 2022 (citing *Harmelin* ). Furthermore, while the precise contours of the "gross disproportionality principle" have been called "unclear," the principle is ap-

plicable only in the "exceedingly rare" and "extreme" case. *Gonzalez v. Duncan,* 551 F.3d 875, 879–80 (9th Cir.2008) (quoting *Lockyer v. Andrade,* 538 U.S. 63, 72–73, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)). *See also Rummel v. Estelle,* 445 U.S. 263, 272, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) ("[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare"). In addition, "[a] punishment within legislatively mandated guidelines is presumptively valid." *United States v. Mejia–Mesa,* 153 F.3d 925, 930 (9th Cir.1998) (citing *Rummel,* 445 U.S. at 272, 100 S.Ct. 1133); *Belgarde v. State of Montana,* 123 F.3d 1210, 1215 (9th Cir. 1997) (so long as sentence imposed does not exceed statutory maximum, it will not be overturned on Eighth Amendment grounds).

Within the last several years the Supreme Court has considered a number of Eighth Amendment cases involving juvenile offenders, that is, defendants who were under the age of 18 at the time they committed their offenses. In particular, in *Roper v. Simmons,* 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) the Supreme Court held that the Eighth Amendment bars capital punishment for juvenile offenders. *Roper,* 543 U.S. at 573–74, 125 S.Ct. 1183. In *Graham v. Florida,* the Supreme Court held that a sentence of life without parole violates the Eighth Amendment when imposed on juvenile nonhomicide offenders. *Graham,* 130 S.Ct. at 2023–24. Most recently, in *Miller v. Alabama,* —— U.S. ——, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), a case which concerned a juvenile who was 14 years old at the time he committed a murder, the Supreme Court held that a mandatory sentence of life without the possibility of parole violates the Eighth Amendment, where a sentencing court has no discretion to consider the defendant's youth or other

"mitigating qualities." *Miller*, 132 S.Ct. at 2467.

### 2. *Analysis.*

 Here, it must be found that the lack of controlling Supreme Court precedent means that, under the AEDPA, this Court must defer to the state court's denial of this claim. It is undisputed that Petitioner will be eligible for parole, perhaps as early as age 55, but at the latest, by Petitioner's calculation, in 40 years, when Petitioner is almost 60 years old. Notwithstanding the holdings in *Roper, Graham,* or *Miller,* this Court is not aware of any controlling Supreme Court precedent which holds, or could be construed to hold, that the sentence at issue here of 40–years–to–life with the possibility of parole, for a juvenile who was 16 years old at the time of the nonhomicide crime, violates the Eighth Amendment. This Court is also not aware of any Supreme Court precedent which holds that the state sentencing court was required to consider certain mitigating factors before it imposed the instant life-with-the-possibility-of-parole sentence. *Cf. Miller,* 132 S.Ct. at 2464–69 (sentencing court may be required to consider defendant's youth and other factors before imposing sentence of life without the possibility of parole).

Likewise, it cannot be said that Petitioner's sentence is one of the "exceedingly rare" situations in which the sentence is "grossly disproportionate" to the crime for which he was convicted. Here, Petitioner does not dispute that the sentence was authorized by California law. Petitioner attempted to murder two individuals, wounding one of them seriously in the stomach; and it was fortuitous for Petitioner that one or both of the attempted murder victims did not wind up dead. This Court's survey of comparable cases finds no violation of the Eighth Amendment, and no grant of habeas relief, for crimes that involved harsher sentences and, in some instances, involved juveniles or even-less-serious nonhomicide crimes. *Cf., e.g., Harmelin,* 501 U.S. at 995, 111 S.Ct. 2680 (holding that sentence of life without parole was not grossly disproportionate to a felony offense of possession of 672 grams of cocaine for a first-time offender); *Bunch v. Smith,* 685 F.3d 546, 547–48 (6th Cir.2012) (state court's determination that 16–year–old offender's cumulative 89–year sentence for robbery, kidnapping, and rape did not violate Eighth Amendment was not contrary to, or unreasonable application of, clearly established federal law, citing *Graham* ); *Norris v. Morgan,* 622 F.3d 1276, 1291–92 (9th Cir.2010) (sentence of life without parole for adult convicted in State of Washington of first degree child molestation was justified by gravity of offense and criminal history and was not cruel and unusual punishment); *Khalifa v. Cash,* No. ED CV 10–1446–GAF (PLA), 2012 WL 1901934, at *30 (C.D.Cal.2012) (no relief under AEDPA for sentence of 25–years–to–life for 15–year–old offender guilty of first degree murder); *Delatorre v. Haws,* No. 2:09–CV–1974–TJB, 2011 WL 2471027, at *27–29 (E.D.Cal.2011) (no clearly established Supreme Court law prohibiting sentencing juvenile to life in prison for murder).

Taken together, it must be found that, because Petitioner will be eligible for parole within his expected lifetime, before he turns 60, his sentence for these two attempted murders does not constitute cruel and unusual punishment.

### *RECOMMENDATION*

For the foregoing reasons, **IT IS RECOMMENDED** that the District Court issue an Order: (1) accepting and adopting this Report and Recommendation; (2) de-

nying the First Amended Petition; and (3) dismissing this case with prejudice.

July 19, 2012

## JUDGEMENT

Pursuant to the Order Accepting the Findings and Recommendations of the United States Magistrate Judge,

**IT IS ADJUDGED** that the Petition for Writ of Habeas Corpus is dismissed with prejudice.

