APPEL, Justice
(dissenting).
I respectfully dissent.
Iowa Code sections 702.11 and 907.3 (2011) mandate that a district court impose prison time for all persons convicted of forcible felonies, thereby precluding the possibility that a juvenile might be placed on probation. The mandatory prison term is automatically imposed on adults and juveniles alike. The question in this case is whether these automatic, one-size-fits-all statutes may be applied equally to adults and to juveniles notwithstanding the observations of the United States Supreme Court and this court that because of their reduced moral culpability, children are “constitutionally different from adults for sentencing purposes” and this constitutional difference is not “crime-specific.” State v. Null, 836 N.W.2d 41, 65 (Iowa 2013) (quoting Miller v. Alabama, 567 U.S. 460, 470-73, 132 S.Ct. 2455, 2464-65, 183 L.Ed.2d 407 (2012)). .
I. Recent Caselaw Related to the Application of the Cruel and Unusual Punishment Clauses of the United States and Iowa Constitutions to Juvenile Offenders.
A. Overview of Recent United States Supreme Court Cases. In a series of cases, the United States Supreme Court has considered the application of the Cruel and Unusual Punishment Clause of the United States Constitution to sentencing children convicted of crimes committed while under the age of eighteen. See Miller, 567 U.S. 460, 132 S.Ct. 2455; Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010); Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005). In the now familiar trilogy of Roper, Graham, and Miller, the United States Supreme Court outlined a number of features of youth, concluding that children *106 are “constitutionally different from adults for purposes of sentencing” and that these differences were not “crime-specific.” Miller, 567 U.S. at 470-73, 132 S.Ct. at 2464-65; see also Graham, 560 U.S. at 68, 130 S.Ct. at 2026; Roper, 543 U.S. at 572-73, 125 S.Ct. at 1197.
The United States Supreme Court based its determination that children are “constitutionally different from adults for purposes of sentencing” because of the characteristics of youth. Miller, 567 U.S. at 470-72, 132 S.Ct. at 2464. Among other things, the United States Supreme Court noted that youth have less developed judgment, that children do not manifest the same level of responsibility or maturity as adults, that they are more susceptible to negative influences and outside pressures—including peer pressure, and that the character and personality of a child are not developed to the same extent as an adult. Miller, 567 U.S. at 470-72, 132 S.Ct. at 2464; Graham, 560 U.S. at 68, 130 S.Ct. at 2026; Roper, 543 U.S. at 569-70, 125 S.Ct. at 1195-96. As a result, juvenile offenders generally have less moral culpability for their crimes than adult offenders. Miller, 567 U.S. at 470-73, 132 S.Ct. at 2464-65. The United States Supreme Court emphasized that its observations about the diminished culpability of youth were not “crime-specific” but are generally applicable. Id. at 472-73, 132 S.Ct. at 2465.
Applying the above principles, the United States Supreme Court held that the Cruel and Unusual Punishment Clause of the United States Constitution (1) categorically prohibited the imposition of the death penalty on juvenile criminal offenders, Roper, 543 U.S. at 578-79, 125 S.Ct. at 1200; (2) categorically prohibited the imposition of life without the possibility of parole to juveniles for nonhomicide offenses, Graham, 560 U.S. at 82, 130 S.Ct. at 2034; and (3) prohibited the imposition of life imprisonment without the possibility of parole for homicide offenses unless a court determined, after an evidentiary hearing, that the juvenile was one of those uncommon juveniles who demonstrated irretrievable depravity, Miller, 567 U.S. at 489-90, 132 S.Ct. at 2475.
In reaching these conclusions, the Roper-Graham-Miller trilogy relied, at least in part, on neuroscientific developments, indicating a willingness to consider the scientific developments in evaluating constitutional issues.[4] Further, in Miller particularly, the Supreme Court moved away from its reliance on societal consensus in evaluating claims under the Cruel and Unusual Punishment Clause of the Eighth Amendment and toward reliance on the Court’s own independent judgment. 567 U.S. at 485-87, 132 S.Ct. at 2473; see John F. Stinneford, Youth Matters: Miller v. Alabama and the Future of Juvenile Sentencing, 11 Ohio St. J. Crim. L. 1, 4-5 (2013). The United States Supreme Court also cited international norms, noting, for instance, that the United States was the only country in the world to give official sanction to the juvenile death penalty. Roper, 543 U.S. at 575, 125 S.Ct. at 1198.[5]
*107 A fundamental question after Miller has been whether the principles announced therein should be given a broad or narrow gloss. Initially, the battle lines were drawn over the question of whether the holding in Miller was merely procedural or substantive. The question was important, as procedural caselaw developments are generally not given retroactive effect, while substantive changes are generally applied retroactively.
Some courts took a narrow view of Miller, suggesting that it was only a procedural decision and therefore the decision was not retroactive. The general notion espoused by these courts was that Miller required only a hearing, but that the substance of the law changed little. See, e.g., People v. Carp, 496 Mich. 440, 852 N.W.2d 801, 825 (2014), vacated sub nom. Davis v. Michigan, — U.S. -, 136 S.Ct. 1356, 194 L.Ed.2d 339 (2016); Chambers v. State, 831 N.W.2d 311, 328-31 (Minn. 2013), overruled by Jackson v. State, 883 N.W.2d 272, 279 (Minn. 2016). We joined other courts in viewing Miller broadly as substantive in nature. See State v. Ragland, 836 N.W.2d 107, 117 (Iowa 2013); see also People v. Davis, 379 Ill.Dec. 381, 6 N.E.3d 709, 722 (2014); Diatchenko v. Dist. Att’y, 466 Mass. 655, 1 N.E.3d 270, 281 (2013).
The United States Supreme Court settled this particular question in Montgomery v. Louisiana, 577 U.S. -, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016). In Montgomery, the Supreme Court held that Miller was substantive and should be given retroactive effect. Id. at -, 136 S.Ct. at 736. In particular, the Court in Montgomery emphasized that the decision in Miller was not just a matter of process, but a matter of substance, namely, that because of the distinctive characteristics and the lessened culpability of youth, only in extremely rare cases could children be subject to life sentences without the possibility of parole even in cases involving homicide. Id. at -, 136 S.Ct. at 733-34. The Montgomery Court suggested that states could meet the constitutional requirement of Miller by simply enacting statutes that eliminated juvenile life sentences without the possibility of parole. See id. at -, 136 S.Ct. at 736.
After Montgomery, however, the battle lines moved but the fight continues. Some seek to find ways to limit the scope of Roper, Graham, and Miller by asserting, for instance, that the principles apply only in the death penalty or life-without-the-possibility-of-parole contexts and do not apply to aggregate sentences that may add up to lengthy prison terms.
Proponents of a narrow reading of Roper, Graham, and Miller tend to minimize the statement in Miller that children are “constitutionally different” and the declaration that the principles enunciated in Roper and Graham are not “crime-specific.” See, e.g., Graham, 560 U.S. at 124, 130 S.Ct. at 2058 (Alito, J., dissenting) (“Nothing in the Court’s opinion affects the imposition of a sentence to a term of years without the possibility of parole.”); United States v. Reingold, 731 F.3d 204, 214 (2d Cir. 2013) (“Much less does a five-year sentence equate to one of ‘the law’s most serious punishments’ so as to raise the constitutional concerns identified in Miller v. Alabama about the mandatory application of life without parole to all juveniles.” (quoting Miller, 567 U.S. at 482-83, 132 *108 S.Ct. at 2471)); Silva v. McDonald, 891 F.Supp.2d 1116, 1131 (C.D. Cal. 2012) (“Notwithstanding the holdings in Roper, Graham, or Miller, this Court is not aware of any controlling Supreme Court precedent which holds, or could be construed to hold, that the sentence at issue here of 40-years-to-life with the possibility of parole, for a juvenile ... violates the Eighth Amendment.”).
Proponents of a broad view believe the principles of Roper, Graham, and Miller apply outside the factual confines of the cases. For instance, in Casiano v. Commissioner of Correction, the Connecticut Supreme Court applied the Roper-Graham-Miller trilogy to a fifty-year sentence without the possibility of parole, a term of years, even though Roper, Graham, and Miller involved only death or life-without-the-possibility-of-parole sentences. 317 Conn. 52, 115 A.3d 1031, 1045, 1048 (2015). A number of commentators have stressed the general applicability of the Roper, Graham, and Miller principles to criminal justice settings involving juveniles. See, e.g., Cara H. Drinan, The Miller Revolution, 101 Iowa L. Rev. 1787, 1789 (2016) (characterizing Miller as “a revolutionary decision” that “portends a tremendous shift in juvenile justice policy and practice”); Barry C. Feld, Adolescent Criminal Responsibility, Proportionality, and Sentencing Policy: Roper, Graham, Miller/Jackson, and the Youth Discount, 31 Law & Ineq. 263, 317 n.287 (2013) (“[Adolescents’] crimes may be the same as those of adults, but these offenders simply are not adults and should not be sentenced as if they were.” (quoting ABA, The State of Criminal Justice 329 (2007))); Martin Guggenheim, Graham v. Florida and a Juvenile’s Right to Age-Appropriate Sentencing, 47 Harv. C.R.-C.L. L. Rev. 457, 458 (2012) [hereinafter Guggenheim] (arguing that, after Graham, “juveniles have a substantive constitutional right to be sentenced as juveniles and that mandatory sentencing schemes designed for adults may not be automatically imposed on juveniles without courts first conducting a sentencing hearing at which prosecutors must bear the burden of proving that the juvenile deserves the sentence”); Elizabeth Scott et al., Juvenile Sentencing Reform in a Constitutional Framework, 88 Temp. L. Rev. 675, 676 (2016) [hereinafter Scott] (“[M]any lawmakers have concluded that the analysis and principles at the heart of the Supreme Court’s constitutional framework have important implications for juvenile sentencing and parole regulation beyond the death penalty and [life without the possibility of parole].”).
Those viewing Miller as establishing broad principles of law draw support from Chief Justice Roberts’ dissent in Miller. In his dissent, he agreed with those who saw the larger application of Miller principles. Miller, 567 U.S. at 499-503, 132 S.Ct. at 2481-82 (Roberts, C.J., dissenting). According to Chief Justice Roberts, by emphasizing that children are different, the majority in Miller announced a general principle of reduced culpability that applies not only to the crimes at issue in the cases but generally to the criminal conduct of young offenders. Id.-, see also Scott, 88 Temp. L. Rev. at 681. As will be seen below, our cases agree with the Chief Justice’s assessment.
B. Overview of Recent Iowa Supreme Court Cases. We have considered the reasoning of the United States Supreme Court in Roper, Graham, and Miller in a series of juvenile cases in which challenges to sentences were raised under the cruel and unusual punishment provision of article I, section 17 of the Iowa Constitution. State v. Sweet, 879 N.W.2d 811 (Iowa 2016); State v. Seats, 865 N.W.2d 545 (Iowa 2015); State v. Lyle, 854 N.W.2d 378 (Iowa 2014); Ragland, 836 *109 N.W.2d 107; State v. Pearson, 836 N.W.2d 88 (Iowa 2013); Null, 836 N.W.2d 41. These cases generally demonstrate a broad and consistent application of the Roper-Graham-Miller principles under article I, section 17 of the Iowa Constitution.
We began our response to Roper, Graham, and Miller in Ragland, 836 N.W.2d 107. In Ragland, we held that a life-without-the-possibility-of-parole sentence, even if commuted to a mandatory term of sixty years, violated the Roper-Graham-MiUer principles under article I, section 17 of the Iowa Constitution. Id. at 122. In doing so, we explained that the substantive nature of the Miller holding limited the ability of the state to impose life without the possibility of parole -without an individualized hearing. Id. at 114-17.
In Null, we modestly extended the approach in Ragland to a case in which a juvenile was sentenced to á mandatory term' of 52.5 years. 836 N.W.2d at 45. In Null, we recognized that his 52.5-year sentence might not technically be life without the possibility of parole,- but emphasized the application of the principles of Roper, Graham, and Miller. Id. at 72-73. Specifically, we stated “the notions in Roper, Graham, and Miller that ‘children are different’ and that they are categorically less culpable than adult offenders apply as fully in this case as in any other.” Id. at 71.
We thus recognized that the teaching of Roper, Graham, and Miller is not crime specific. Id. at 72-73. In Null, we held that the Roper-Graham-Miller principles apply to lengthy prison terms imposed as a result of consecutive sentencing. Id. at 74.
Similarly, in Pearson, a seventeen-year-old offender convicted of two counts of first-degree robbery -and two counts of first-degree burglary received a total cumulative sentence of fifty years and was not eligible for parole for thirty-five years. 836 N.W.2d at 91, 93, 96. As in Null, we noted that because “ ‘children are constitutionally different from adults,’ they ordinarily cannot be held to the same standard of culpability as adults in criminal sentencing.” Id. at 95 (quoting Null, 836 N.W.2d at 74). We concluded the Raper-Graham-Miller principles applied and that it should be “rare or uncommon” for children to receive a lengthy prison term without the possibility of parole for the crimes committed in the case. Id. at 96. We remanded the matter to the district court for resentenc-ing. Id. at 97.
In Lyle, a seventeen-year-old offender convicted of robbery in the second degree was sentenced to a ten-year prison sentence with a mandatory minimum' of seven years. 854 N.W.2d at 381. We held that the Roper-Grahamr-Miller principles applied, vacated the sentence, and remanded the ease to the district court for a Miller-type hearing. Id. at 404. We concluded,
Miller is properly read to support a hew sentencing framework that reconsiders mandatory sentencing for all children. Mandatory minimum sentencing results in cruel and unusual punishment due to the differences between children and adults. This rationale applies to all crimes, and no principled basis exists to cabin the-protection only for the most serious crimes.
Id. at 402.
We further stated that “the sentencing of juveniles according to - statutorily required mandatory mínimums does not adequately serve the legitimate penological objectives in light of the child’s categorically diminished culpability.” Id. at 398. We noted that individualized sentencing requires the sentencer to “look[ ] behind the label of the. crime into the details of the particular offense and the individual circumstances of the child.” Id. at 400-01. We *110 again noted that the principles of Roper, Graham, and Miller are not crime specific. Id. at 399.
Since Lyle, there have been two additional juvenile cruel and unusual punishment cases under article I, section 17 of the Iowa Constitution. In Seats, we emphasized that in the context of a Miller-type hearing the district court was to consider the features of youth outlined in Roper, Graham, and Miller as mitigating factors, and we required specific factual findings before a juvenile was sentenced to a mandatory term. 865 N.W.2d at 555-58. In Sweet, we held that life without the possibility of parole was categorically prohibited under article I, section 17 of the Iowa Constitution. 879 N.W.2d at 839.
All the above cases emphasize several common themes drawn from Roper, Graham, and Miller. First, we have repeatedly stated that for purposes of the cruel and unusual punishment provision of article I, section 17, “children are different.” Pearson, 836 N.W.2d at 96; Null, 836 N.W.2d at 71. Second, we have repeatedly emphasized that the differences between children and adults are not “crime specific.” Lyle, 854 N.W.2d at 401; Null, 836 N.W.2d at 70.
We have thus not limited Roper, Graham, and Miller to their specific factual context of life without the possibility of parole, as some have urged, but have instead applied the principles to mandatory prison terms of sixty years, 52.5 years, thirty years, and seven years. Further, we have emphasized that youth is a mitigating factor and that district courts should engage in detailed fact-finding before coming to the conclusion that adult sentences may be appropriate for juvenile offenders. Seats, 865 N.W.2d at 557-58; Null, 836 N.W.2d at 70. Finally, we have repeatedly emphasized that the fact that a youth is approaching eighteen years of age does not defeat application of the Roper-Graham-Miller principles. Sweet, 879 N.W.2d at 831; Null, 836 N.W.2d at 55.
II. Application of Principles Under Article I, Section 17 of the Iowa Constitution.
In this case, the offender has been convicted of offenses involving a forcible felony. The legislature has determined that these offenses tend to be more serious than nonforcible offenses and, as a result, a mandatory prison term is required for all offenders, including juvenile offenders.
The problem, however, is that under these statutes, juveniles and adults are treated the same. There is no recognition that juveniles are “constitutionally different” from adults and there is no recognition that this difference is not “crime specific.” Thus, two of the bedrock principles of Roper, Graham, and Miller, as applied in our cases, are offended by the undiscriminating nature of the statutes. See, e.g., Pearson, 836 N.W.2d at 96; Null, 836 N.W.2d at 71-72.
Further, the application of the statutes, in this and every case, amounts to a de facto mandatory minimum prison term. Under these statutes, a juvenile offender will serve what amounts to a mandatory prison term of some length. Although formally eligible for parole from day one, it is clear, as a practical matter, that no action will be taken until the offender has been incarcerated for some period of time. It amounts to a de facto mandatory minimum sentence of undetermined length.
It is, of course, true that the offender is eligible for parole from day one. But this is form over substance. We have crossed the form over substance bridge before. In Ragland, the argument was made that a sixty-year mandatory prison term was not life without the possibility of parole and thus was outside the Roper-Graham-Mil *111 let principles. 836 N.W.2d at 121. We rejected the claim, noting that the reasoning in Graham applies to life without the possibility of parole and to terms that are its practical equivalent. Id.
A mandatory minimum prison term of six months applied indiscriminately to juveniles and adults would certainly violate Lyle principles. An indefinite mandatory prison term applied to both juveniles and adults suffers from the same kind of infirmity. Under the circumstances, we think the better approach is to allow a juvenile offender the opportunity to demonstrate why he or she should be treated differently than an adult.
Under the teaching of Roper, Graham, and Miller as implemented in the Rag-landr-Nullr-Pearsowr-Lyle-Seats-Sweet line of cases, the features of youth—namely, the impetuousness, the recklessness, the susceptibility to peer pressure, the lack of judgment—are not crime specific. They are applicable to all crimes. In Lyle, we declared application of these principles prevents the legislature from categorically imposing a mandatory minimum prison sentence that treats all juvenile offenders as if they were adults and refuses to allow a court to recognize the decreased culpability of youth. 854 N.W.2d at 402. Thus, in Lyle, we held that a seven-year mandatory minimum sentence could not be imposed without a hearing to consider the impact of the characteristics of youth in lessening criminal culpability. Id.
The defect of the statutes in this case is that they mandatorily apply to all juveniles and adults. They focus solely on the crime and prohibit in all cases consideration of the diminished culpability of a juvenile offender. See Guggenheim, 47 Harv. C.R.C.L. L. Rev. at 490-91 (“When the only inquiry made by the sentencing court is to consult the legislature’s mandatory punishment for the crime, without any further inquiry into whether the punishment is appropriate for a juvenile, for no other reason that it is appropriate for an adult, the Constitution requires more.”). Juveniles generally have less culpability than adults, and if that is true, they generally should receive lesser punishment for the same crime.
Further, there may well be circumstances, for instance, in which a juvenile offender is convicted of aiding and abetting under circumstances in which the offense occurred but was not intended by the juvenile, the juvenile had no direct involvement in the crime, and the Roper-Graham-Miller factors weigh strongly in favor of diminished culpability. As we noted in Lyle, “A forcible felony can be the product of inane juvenile schoolyard conduct just as it can be the product of the cold and calculated adult conduct most people typically associate with a forcible felony....” 854 N.W.2d at 401.
Could a mandatory prison term be automatically imposed on Propps without an opportunity to show diminished culpability in a Miller-type hearing? I think not. Under our cases, and particularly under Lyle, a juvenile offender is entitled to a judicial determination that an indefinite period of incarceration for the individual defendant is not so disproportionate as to result in cruel and unusual punishment.
I recognize there are alternative theories that could affirm the district court in this case. For instance, it could be argued that the only automatic or mandatory result of the statutes is a relatively short period of confinement before a juvenile is considered for parole and that, in the case of forcible felonies, such a relatively brief period of mandatory imprisonment is constitutional as applied to all juvenile offenders. This rationale has some appeal. Yet, the mandatory nature of incarceration is much more appropriate for adults than for *112 children with categorically diminished culpability. Further, some forcible felonies may be very serious offenses, while others less so. Finally, the difference between incarceration for a few months and potential probation is substantial and more than just a mere matter of calendar time. A prison term even for a relatively short period of time is crossing of a major Rubicon for the juvenile offender. A trip to the big house, no matter how brief, is not a de minimis event.
Another possibility would be to short circuit the Miller procedure in this case because of the unattractive nature of the facts so far developed. At the age of seventeen, Propps shot a person four times. No one would argue that the conduct of Propps amounted to inane schoolyard misconduct. See Lyle, 854 N.W.2d at 401. These facts alone make him a strong candidate for incarceration as reflected in the district court’s imposition of four consecutive ten-year sentences.
Yet, Propps is entitled to attempt to make his Miller case before the district court. We do not deprive criminal defendants of procedural rights merely because of their perceived lack of merit. Just as a seemingly obviously guilty defendant is entitled to demand a fair trial, a juvenile offender is entitled to attempt to show that his diminished culpability recognized in Roper, Graham, and Miller requires that he or she be treated differently than adults for sentencing purposes. In short, we are confronted in this appeal with a question of law and procedure, not a question focusing on the specific facts and circumstances of Propps and his crimes.
I would thus remand this case to the district court for further proceedings. Nothing in this opinion, of course, precludes an appropriate prison sentence for Propps. What is precluded, under our approach to the Roper-Graham-Miller principles, is a statutory scheme imposing mandatory prison terms that categorically treat children the same as adults without affording an opportunity to show the diminished culpability of youth requires a different outcome. I would decide this case on this narrow, but important point.
For the reasons stated above, I respectfully dissent.
Hecht, J., joins this dissent.

. For a summary of the scientific developments, see Elizabeth Scott, et al., Juvenile Sentencing Reform in a Constitutional Framework, 88 Temp. L. Rev. 675, 684-87 (2016).

. Aside from sentencing, the United States Supreme Court has recognized the differences between juveniles and adults in other criminal justice contexts. On two occasions, the Supreme Court has barred the use of confessions obtained under circumstances that would have led to a different result if the suspect were an adult. Gallegos v. Colorado, 370 U.S. 49, 55, 82 S.Ct. 1209, 1213, 8 L.Ed.2d 325 (1962); Haley v. Ohio, 332 U.S. 596, 601, 68 S.Ct. 302, 304, 92 L.Ed. 224 (1948). Further, in J.D.B. v. North Carolina, the Supreme Court held that a determination of whether a minor is in custody should take into account the age of the suspect. 564 U.S. *107 261, 265, 131 S.Ct. 2394, 2399, 180 L.Ed.2d 310 (2011); see generally Martin Guggenheim, Graham v. Florida and a Juvenile’s Right to Age-Appropriate Sentencing, 47 Harv. C.R.C.L. L. Rev. 457, 488-89 (2012) (noting that J.D.B. "mark[ed] a return to special protections for youth that characterized the Court's confession suppression caselaw more than half a century ago”).